BOYD CONSTRUCTION Co., et al. *v.* WORTHY

No. 40955          December 15, 1958          107 So. 2d 120

*Vardaman S. Dunn,* Jackson, for appellants.

*Leon Provine,* Grenada, for appellee.

Lee, J.

Fred Worthy, on his claim of disability on account of two alleged injuries, under the Workmen's Compensation Law, against Boyd Construction Company and its insurer, was denied compensation by both the attorney-referee and the Commission; but, on his appeal to the circuit court, the order of the Commission was reversed, and a judgment awarding him benefits, was entered. From that judgment, the employer and its insurer appealed.

The evidence as to whether the claimant in fact sustained any injury and the extent thereof was in sharp conflict.

The claimant testified that, in July 1956, a scaffold, twenty-two feet high, on which he was "rubbing concrete", fell, and that as a result, he was knocked unconscious and sustained injuries to his left shoulder, hand, leg and back. Several days later he went to Dr. J. K. Avent, Sr., but was treated by him only for an abscess on the neck.

On the contrary, Roscoe Craft, the claimant's nephew, who was in charge of the crew that day, testified that he was present at the time; that the scaffold fell only twelve feet; that the ground underneath was muddy and soft; that claimant was not knocked unconscious; that the witness inquired if Worthy was hurt and he made no complaint; that Worthy helped to rebuild the scaffold that afternoon and continued to work without complaint for three or four weeks thereafter; and that his efforts were entirely satisfactory. Besides, when the claimant was treated for the abscess, Dr. Avent testified that Worthy "did not open his mouth about an accident."

Worthy also testified that he went back to work, and, in November 1956, while he and James Sumner were loading a 6 x 12 x 14 foot seasoned oak timber on a truck, his helper dropped his end, and as a result, claimant's back was wrenched and his hand was skinned. After work that day, Dr. O. B. Crocker dressed the hand. While the claimant testified that he began to have trouble with his stomach the next day, he admitted that he continued to work regularly until the last days of December. On January 6, 1957, he went to Dr. Avent, who admitted him to the hospital, and treated him for ten days.

On the contrary, John Gattis, the foreman, testified that Worthy and three other employees were loading the timber; that one end was on the truck, and the workmen were pushing the timber forward; that it merely turned over in Worthy's arms, scraping his wrist and pulling off a little skin; that Worthy said it did not hurt; that witness put a dressing on it, and when work was over that day, Dr. Crocker redressed it; that claimant continued to work thereafter, using both hands and arms in rolling wheelbarrows loaded with concrete, and without any complaint; that his work was satisfactory; and that he did not say anything about his stomach until the day he quit. Dr. Avent testified that, although Worthy complained of passing and vomitting blood, he could find no evidence therefor, and that there was no blood on the linens. Besides, he made a blood count, and, since everything was normal, the patient could not have had a bleeding ulcer or hemorrhoids, although the doctor had operated on him for a ruptured ulcer in 1948. The doctor diagnosed the condition as ''acute enteritis'', and found nothing that could have been attributed to an injury.

Dr. George D. Purvis, an orthopedic surgeon, who examined the claimant on May 2, 1957, testified in detail as to the result thereof. He found normal motion of both shoulders and wrists. The grip of both hands was normal, and there was no demonstrable weakness of the left

upper extremity. The muscular development of the entire back was excellent, and there was normal motion therein in all directions. He found no evidence of fractures, dislocations or disease processes. There were two small reactive bony spurs on the upper spine, but they had the appearance of developmental rather than a traumatic abnormality. While there was a slight grating crepitation of the subacromial bursae, there was no history of injury to the right shoulder, and this condition was present in both. So, as a result of his examination, and in answer to a hypothetical question, the doctor said that he could find nothing to prevent the claimant from performing manual labor.

Dr. William Thomas Oakes, appointed by the Commission to make an examination of Worthy, did so on April 5, 1957. He testified in detail as to his findings. In the history, Worthy made no reference to his alleged July injury. As to the alleged second injury, the history was in accordance with his testimony, namely, that his helper dropped the end of the timber. The doctor was of the opinion that the two small spurs were a resultant arthritic condition, secondary to a compression fracture. He could hear crepitation in the left wrist on rotation. He conceded that condition frequently occurs without trauma. It was his opinion that the grip of the left hand was diminshed. From the history, it was also his impression that the passing and vomitting of blood was due to the fact that an old duodenal ulcer had been activated. From all of which he estimated disability of twenty percent to the back, fifteen percent to the hand, and ten percent to the body as a whole.

It is evident from the opinion of Dr. Oakes that he was influenced from the history which Worthy gave him. But it must be kept in mind that there was a violent conflict as to the facts making up the history of the case.

The foregoing recapitulation of the evidence, both as to the fact of injury and as to the extent thereof, demon-

strates the irreconcilability of the conflict. There was substantial evidence to show that the claimant was not entitled to an award. On the other hand, if the Commission had awarded benefits, the evidence was such that an appellate court would not have been warranted in reversing the same as against the overwhelming weight of the evidence.

On the question as to whether the circuit court should reverse the order of the Commission, where the evidence is in such hopeless conflict, the cases of Fondren v. Fortenberry Drilling Company, 233 Miss. 210, 101 So. 2d 654; and Cole v. Superior Coach Corporation, 234 Miss. 287, 106 So. 2d 71; are directly in point.

██ ▓ The learned circuit judge was in error in reversing the order of the Commission, which denied an award. Consequently, the judgment of the court is reversed, and a judgment will be entered here for the appellants, reinstating the order and judgment of the Commission.

Reversed and judgment here for appellants.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.