TANNER *v.* AMERICAN HARDWARE CORPORATION, et al.

No. 41477          April 11, 1960          119 So. 2d 380

*Brewer, Brewer & Luckett,* Clarksdale; *Pyles & Tucker,* Jackson, for appellant.

*Watkins & Eager,* Jackson, for appellee.

McGEHEE, C. J.

This appeal is taken from an order of the attorney-referee, the full Commission, and the circuit court, denying compensation to the appellant, S. C. Tanner, under the Miss. Workmen's Compensation Law of 1948, as amended.

The claimant, S. C. Tanner, is approximately 65 years of age and claims to have had a fall and sustained an injury on the morning of June 26, 1957, arising out of and in the course of his employment as a night watchman at the place of business of his employer, the American Hardware Corporation, Clarksdale, Mississippi.

There were no witnesses to the accident, but the claimant testified that about 6:30 A. M. of June 26, 1957, while making his rounds and punching the clock he came to

station 15 and slipped in some grease on the concrete floor and fell. The place where he says he fell was on a platform about 20 feet wide and about 100 feet in length behind the building, and the testimony is in conflict as to whether or not there was any grease on the floor where he fell. He testified that he was carrying the clock, and that when he fell on his left side and leg that he broke the clock, which was underneath the calf of his leg when he fell. He worked on until 8 o'clock that morning and then went home, reporting to his wife that he had sustained a fall by slipping and falling in grease, and she testified that he had grease on his pants and that his leg was swollen.

The claimant continued to work on his shift from 12 o'clock at night until 8 in the morning until the night of August 6, 1957, when he became disabled and his son carried him home. On the next day he made an appointment with Dr. Charles Neal in Jackson. Dr. Neal referred him to Dr. Jack V. King for treatment. Dr. King found that he was suffering from ileo-femoral venous thrombosis of the left leg or thrombo-phlebitis, which is explained to mean in layman's language as being varicose veins. He was treated by Dr. King at St. Dominics Hospital in Jackson for a period of two weeks and discharged, but was unable to return to his work.

Other employees, who did not see the accident on the morning of June 26, 1957, testified that upon their arrival for work they learned of the accident, one of them saying that he saw the grease on claimant's pants, and others saying that they saw him ''limping'' or ''hobbling'' during the period which ensued between June 26, 1957, and August 6, 1957.

Dr. King, as a witness for the claimant, testified that the claimant did not advise him that he had the fall until October 9, 1957, and it is undisputed that he did not report it to anyone in authority at the place of business of his employer, and that the first knowledge that they had that he claimed to have had the fall was when this

proceeding was instituted before the Workmen's Compensation Commission. Dr. King testified that there could have been a causal connection between the fall and the condition that he found the claimant in when he came to see him on August 7, 1957; and he expressed that as being his opinion.

Dr. Rosenblatt of Jackson testified on direct examination that the malady that the claimant had when he saw him in 1958, if caused by a fall, would have been spontaneous. He was corroborated in this view by Dr. Crowson of Clarksdale. Dr. Rosenblatt waivered on cross-examination to the extent of conceding that if the claimant had really had the fall that there could be some causal connection between the fall and the illness from which he was suffering at the time he was seen by Dr. Rosenblatt in 1958, but both he and Dr. Crowson maintained that the varicose vein condition would have been spontaneous after the fall.

The man who followed the claimant as night watchman testified that there was nothing wrong with the clock when he began using the same, and the records of the company failed to disclose that any repairs had been made to the clock.

Again there was testimony that the only grease that was about the premises was that which was carried on the inside of the building in fifty gallon capacity drums, where the same were opened and the oil used for greasing machinery. The testimony of the witnesses for the employer tended to show that there was no grease on the platform.

But it is strenuously urged that since the oral testimony of the plaintiff in regard to his having sustained the fall in the course of and arising out of his employment on the morning of June 26, 1957, and that the testimony of his witnesses as to what he told them in regard to the matter is wholly uncontradicted, that the attorney-referee and the Commission had no right to arbitrarily reject this testimony. It is true that "evi-

dence which is not contradicted by positive testimony or *circumstances*, and is not inherently improbable, incredible, or unreasonable, cannot be arbitrarily or capriciously discredited, disregarded, or rejected, even though the witness is a party or interested; and, unless shown to be untrustworthy, is to be taken as conclusive, and binding on the triers of fact * * *'' (Emphasis supplied.) 32 C. J. S., Evidence, Section 1038, pp. 1089-1092. To the same effect are the decisions of Mobile, Jackson and Kansas City R. R. Company v. Jackson, 92 Miss. 517, 46 So. 142; Holmes v. Holmes, 154 Miss. 713, 123 So. 865; Lucedale Veneer Company v. Rogers, 211 Miss. 613, 48 So. 2d 148, 53 So. 2d 69; and Reyer v. Pearl River Tung Company, 219 Miss. 211, 68 So. 2d 442.

The proof disclosed that there were signs placed in the building requesting the employees to notify their foreman in case of an injury sustained, however slight it may be. No notice was ever given to anyone in authority in regard to the alleged injury of June 26, 1957. The testimony showed, as aforesaid, that the first notice that those in authority had as to this accident was when the proceeding was commenced before the Workmen's Compensation Commission.

We think that there were ample circumstances to make an issue for the triers of fact as to whether the testimony of the claimant and his witnesses should prevail over the circumstances hereinbefore referred to.

In other words, the attorney-referee, the full Commission, and the circuit court, denied liability on conflicting testimony, and we are of the opinion that the decision of the attorney-referee and the Commission, which was affirmed by the circuit court, was supported by substantial evidence, and that the same should therefore be affirmed.

Affirmed.

*Lee, Kyle, Holmes* and *Ethridge, JJ.,* concur.