KENNEDY *v.*
WILLIAMS-MCWILLIAMS INDUSTRIES, INC., et al.

No. 42762 October 21, 1963 156 So. 2d 806

*Fountain D. Dawson,* Greenville; *Crisler, Crisler & Bowling,* Jackson, for appellant.

*Keady, Campbell & DeLong,* Greenville, for appellees.

KYLE, J.

This case is before us on appeal by Jim Kennedy, claimant, from a judgment of the Circuit Court of Washington County reversing an order of the Mississippi Workmen's Compensation Commission awarding

compensation to the claimant for temporary total disability for a knee injury sustained by the appellant on August 24, 1961, while engaged in the performance of his duties as an employee of the appellee Williams-McWilliams Industries, Incorporated.

The record shows that at the time of his injury the appellant was a member of a dredging crew engaged in dredging sand on a sand bar in the Mississippi River, near Rosedale in Bolivar County. The accident occurred during the early afternoon of August 24, 1961, while the appellant was driving a wedge in the sand with a sledge hammer. The sledge hammer hit a glancing lick and struck the shin of the appellant's left leg midway between his knee and his ankle. The appellant was examined and treated by Dr. W. C. Moore of Rosedale a few hours later. The treatment was for a small bruise, hematoma, and a slight abrasion seepage. The doctor told the appellant to go on back to work and if his injury gave him trouble to come back the next day. The appellant returned to work the following day, and worked until his employment was terminated during the week ending September 23, 1961. The appellant was next seen by Dr. Moore for treatment on September 26 and at that time the appellant complained of pain in the left leg which he said radiated up into his knee. The doctor did not x-ray the appellant's knee but gave him a light medicine to satisfy him, and the doctor told him to come back on October 3. The appellant went back to Rosedale on October 3 for treatment as requested, but was not treated because of the absence of Dr. Moore from his office. The appellant was next seen by Dr. M. A. Creekmore in Greenville, Mississippi, and was referred by him to Dr. H. Nelson Hamilton, an orthopedic surgeon. He was examined by Dr. Hamilton on October 6 and again on October 10. He was hospitalized for a period of conservative treatment on October 27.

He stated at that time that he had no evidence of knee difficulty prior to the accident of August 24.

Dr. Hamilton, who was called to testify as a witness for the appellant, stated that the appellant remained in the hospital about two weeks, and was given active range of motion exercises under supervision of the physiotherapist. The doctor stated that he thought the appellant's condition had improved somewhat during the two weeks period and he discharged him from the hospital. But the appellant came back a few days later still having trouble, and the doctor referred him to Dr. Fred Sage of Campbell's Clinic, in Memphis, Tennessee, for consultation. Dr. Sage saw the appellant on December 5. At this point the doctor was asked the following question and gave the following answer:

"Q. After this consultation with the doctor in Memphis, Dr. Hamilton, then what did you do or what treatment was prescribed?

"A. I saw the patient later. He came in and complained of more severe pain in the knee, and on examination on December 26, I detected a positive McMurray's sign of "clump" in the knee joint when I flexed the knee and externally rotated the tibia on the femur and extended the knee, made me feel that the medial cartilage was definitely either torn or unstable and I admitted the patient to the hospital and operated on him on 12-29-62 and repaired the medial collateral ligament, plicated it and tightened it, and excised the medial meniscus which was very atretic and had a transverse tear in the mid-portion. I followed him in the office since that time on gradually increasing weight bearing and injected Hydeltra — T. B. A. in the knee on one or two occasions. He is still complaining of pain in the knee and still hasn't returned to work. He has not reached maximum medical benefit at present but is rapidly improving. In summary, I feel that the patient had a partial tear or laxity of the medial collateral ligament

of the knee; that he had a degenerated medical meniscus and a transverse tear of the medial meniscus in the knee; that he had rather marked hypertrophic arthritis of the knee, as noted at the time of surgery.''

The doctor was then asked: ''Q. Now doctor, with relationship to the cartilage condition that you have described, do you have an opinion that you can express with reasonable medical certainty, what the causal relationship was between that condition and the accident of hitting his leg with the sledge hammer as recorded in your history on August 24, 1961?'' His answer was: ''A. As I previously stated, at the time of my original examination and at the time of each admission to the hospital and on every occasion that I've seen the patient since that time, he's adamantly denied to me ever having any pre-existing knee difficulty, and based upon that fact and based upon what I found at surgery, I feel that the patient had a definite pre-existing hypertrophic arthritis of the knee, or degenerative arthritis of the knee, and if the history be true, there's something happened at the time of the accident causing further internal derangement of the left knee joint and precipitated in the train of events that subsequently occurred.''

The doctor was later asked this question:

''Doctor, do you have an opinion that you can express with reasonable medical certainty that, if a person has hypertrophic arthritis, such as you found in this claimant, can it or can it not be dormant for years, and will or will not trauma light up that condition?''

His answer was:

''It can be dormant for years and, certainly, trauma can light it up or aggravate it.''

There was a sharp conflict in the testimony of appellant's witnesses and the testimony of appellee's witnesses concerning the appellant's physical condition prior to his injury on August 24. It was the contention of the appellee throughout the hearing that the appel-

lant's physical disability for which he claimed compensation benefits was not causally related to the injury suffered by the appellant on August 24, but was due entirely to the crippling effects of a disabling pre-existing arthritis. But several witnesses, who had worked with the appellant or had been closely associated with the appellant for a period of several years, testified that the appellant, prior to his injury of August 24, had "got around" like a normal man and had not complained of his legs; and the appellees' own witness Louis Shelton testified that the first thing he did after the appellant was hired by McWilliams Industries in June 1961, was to take the appellant to a doctor for a physical examination.

On the question of whether the claimant's present disability was causally related to the injury of August 24, 1961, the attorney referee summarized the medical testimony as follows: "It was the testimony of Dr. W. C. Moore that a torn cartilage is difficult to diagnose; that he did not consider a knee injury in his diagnose and treatment; that if claimant had sustained a knee injury it would have locked. Dr. Hamilton was of the opinion that claimant had demonstrable evidence of a pre-existing arthritis of the knee and that the injury for which surgery was performed was caused by the accident of August 24."

When all of the evidence was considered the attorney referee was of the opinion, and the attorney referee so found as a fact, that the claimant had sustained a knee injury on August 24, 1961, when hit on the shin of his left leg with a sledge hammer; that such condition became disabling on October 27, 1961; that the claimant was justified in seeking medical treatment at the hands of a local orthopedic surgeon; and that he had not reached maximum recovery from medical treatment on April 11, 1962. It was therefore ordered that Williams-McWilliams Industries, Inc., employer, and its insurance

carrier furnish medical benefits provided by the Workmen's Compensation Act, including the treatment by Dr. Hamilton and hospital and drug expenses incident thereto, and that the employer and carrier pay the claimant compensation at the rate of $35 per week for temporary disability from October 27, 1961, to such time as his condition becomes static, and his permanent disability, if any, is evaluated, subject to the limitations of the act.

The findings and the order of the attorney referee were affirmed by an order of the Commission on August 2, 1962. From the order of the Commission affirming the findings and award of the attorney referee the employer and its insurance carrier prosecuted an appeal to the circuit court. The circuit court on review found that the decision and award of the Commission was contrary to law and the great weight of the evidence, and was not supported by substantial evidence; and the circuit court entered a judgment reversing the decision of the Commission and dismissed the claim.

The appellant's attorneys have assigned and argued two points as ground for reversal of the judgment of the circuit court: (1) That the circuit court erred in holding that the Compensation Commission did not have substantial evidence on which to base its findings of fact and its judgment approving the award made by the attorney referee; and (2) that the circuit court erred in reversing the findings and award made by the attorney referee and the Commission.

It is the contention of the appellee that the primary question presented for decision by the attorney referee and the Commission was, whether the disability to the appellant's knee was causally related to the shin injury of August 24, 1961; that the decision on that primary question of causal relation was dependent upon the credibility of the appellant's testimony; and that the record establishes that the appellant was a completely

unreliable witness. It is also contended that the attorney referee and the full Commission misinterpreted the testimony of Dr. Hamilton, and that the finding of the attorney referee that ''Dr. Hamilton was of the opinion that claimant had demonstrative evidence of a pre-existing arthritis of the knee and that the injury for which surgery was performed was caused by the accident of August 24'', was wholly erroneous and resulted from the attorney referee inadvertently overlooking the essential portion of Dr. Hamilton's testimony. It is said that Dr. Hamilton testified on cross examination that the appellant's history to him of never having had any arthritic trouble in the knee prior to the injury of August 24 was not medically probable in view of the severity of the arthritic condition actually observed at the time of the surgery, and that if the appellant's history to him was not true, then, in his opinion, the injury of August 24 had nothing whatsoever to do with the appellant's disability of the knee.

 ██ In weighing the testimony of an individual witness, consideration should not be restricted to isolated portions thereof, but all of the witness' testimony including that given on direct and on cross-examination, should be considered as a whole. 32 C.J.S. 1073, Evidence, Sec. 1031; F. W. Woolworth Co. v. Freeman (1953), 193 Miss. 838, 11 So. 2d 447; Thompson v. Thompson (1954), 219 Miss. 552, 69 So. 2d 238; Mutual Life Ins. Co. of New York v. Rather (1954), 221 Miss. 527, 73 So. 2d 163; Posey v. Weatherspoon (1956), 227 Miss. 189, 85 So. 2d 909.

The appellee's attorneys appear to have overlooked the doctor's statement that, based upon the appellant's denial that he had ever had any pre-existing knee difficulty, and ''based upon what I found at surgery, I feel that the patient had a definite pre-existing hypertrophic arthritis of the knee, or degenerative arthritis of the knee, and if the history be true, that is something hap-

pened at the time of the accident causing further internal derangement of the left knee joint and precipitated in the train of events that subsequently occurred."

Dr. Hamilton was asked many hypothetical questions by the appellee's attorney based upon the appellee's assumption that the appellant's disability was due entirely to a preexisting arthritic condition in the knee; and if there appeared to be a conflict in his answers to some of the questions propounded to him on direct and on cross-examination, it was the duty of the Commission as the trier of the facts to resolve those conflicts in the light of the testimony of the witness as a whole. The Commission appears to have done this.

It has been repeatedly stated by this Court that the Commission in a Workmen's Compensation case is the trier of the facts, and that the Commission as such is the judge of the credibility of a witness.

 █ This Court has held in numerous cases that, where a finding of the Commission on a disputed question of fact is supported by substantial evidence, the Court is not authorized to reverse its judgment. Sones v. Southern Lumber Co., 215 Miss. 148, 60 So. 2d 582; Williams Brothers Co. v. McIntosh, 226 Miss. 553, 84 So. 2d 692.

 █ We have made a careful study of the testimony of Dr. Hamilton and the lay witnesses upon whose testimony the attorney referee and the Commission based their findings, and we think that it cannot 'be said that there is no substantial evidence in the record to support the findings of the attorney referee and the Commission. We also think that the circuit court erred in reversing the findings of the Commission and in dismissing the appellant's claim.

For the reasons stated above the judgment of the lower court is reversed, the findings and order of the

Commission are reinstated, and the cause is remanded to the Commission for the enforcement of its award.

Reversed and remanded.

*Lee, P. J., and McElroy, Rodgers and Jones, JJ.,* concur.