DEPENDENT OF PAYTON, DECEASED *v.*
ARMSTRONG TIRE & RUBBER COMPANY, et al.

No. 43109 June 8, 1964 165 So. 2d 336

408

*J. A. Travis, Jr.,* Jackson, for appellant.

*Laub, Adams, Forman & Truly,* Natchez, for appellees.

McElroy, J.

This is an appeal by the claimant, Mrs. Cora Lee Payton, surviving widow and sole dependent of the deceased, from an order of the Circuit Court of Adams County, Mississippi, which affirmed an order of the Mississippi Workmen's Compensation Commission denying compensation benefits to the claimant. We are of the opinion, and so hold that the commission and

circuit court are in error, and the claimant should be allowed compensation.

The question to be determined is whether or not there existed a causal connection or relationship between the death of the claimant's deceased husband and his employment.

It was stipulated that the deceased, Elbert Rex Payton, was employed by Armstrong Tire and Rubber Company on June 6, 1962; his average weekly wage was $110; the sole claimant, a person claiming any rights to compensation, is the widow, Mrs. Cora Lee Payton, who is fifty-five years of age; the deceased, Elbert Rex Payton, was born April 10, 1902, and was, at the time of his death, sixty years of age, approximately five feet eight inches in height, and weighed approximately two hundred eighteen pounds; Payton complained of physical illness on the plant of the company on June 6, 1962; he was taken by ambulance to the Jeff Davis Hospital, leaving the plant at 1:55 p.m.; he expired in the hospital on June 7, 1962, at about 12:55 a.m.

The testimony of Woodrow Smith and Lucius Earl, co-workers with Payton on June 6, 1962 in the Final Finish Department Number Two, was that Payton was required to lift both automobile tires, weighing ten to thirty pounds each, and truck tires, weighing fifty to one hundred ten pounds each, from a conveyer where Payton buffed, re-touched and retrimmed the tires; during the three and a half hours of the morning before lunch Payton lifted about one hundred automobile tires and rolled several truck tires from the conveyor to his work table; June 6, 1962 was the first day Payton worked in Final Finish Department Number Two; Payton ate lunch between 11:30 a.m. and 12:00 noon and returned to his job to find that about forty tires had accumulated in the department while the employees had lunch, because the tire inspector did not have the same lunch hour; within a thirty-minute period

after lunch Payton handled approximately twenty tires; Payton went to the restroom and returned, saying he was sick; Payton looked pale and white and sat on the conveyer, stating that if he could vomit he would feel better; Payton returned to the restroom and never returned to work; and Payton did not get hurt or say he had hurt himself that day.

Joe Malcolm Harreld, Curtis Gipson and Jim Pendergrass, co-employees and witnesses called on behalf of defendants, supported claimant's contention that Payton became ill while in the course and scope of his employment. Mr. R. F. Hurst testified he accompanied the claimant from the company's plant to the hospital.

Several physicians testified. Dr. Allen M. Read, called as a witness on behalf of the employer, testified he saw Mr. Payton in the emergency room at the Jefferson Davis Hospital upon his arrival from the employer's plant. He found claimant to be in a state of mild shock, suffering abdominal pain and sensation of mass in his right abdomen. His blood pressure was below normal and Dr. Read made a temporary diagnosis of an unknown abdominal disorder. Claimant was hospitalized, and after a period of approximately two and a half hours his condition became worse, and Dr. Read called in Dr. Tillman and Dr. Hicks. The three physicians suspected the claimant suffered from a disorder of the aorta. An autopsy revealed the claimant had suffered a large aneurysm of the abdominal aorta and on the right side a long, slit-like tear in the vessel representing that it had ruptured. Dr. Read stated on direct examination that in his opinion the duties of the deceased's employment had no causal connection with the ruptured aneurysm. However, on cross-examination Dr. Read stated he agreed with a text by Dr. Charles H. Best and Norman B. Taylor where it was said that exercise has the most powerful effect on the arterial blood pressure; further that the aneurysm ruptured while

claimant was in the course and scope of his employment; and further, if he had known of the claimant's condition prior to the rupture he would not have permitted him to do anything that called for physical exertion.

Dr. Clifford Tillman, a cardiologist called as a witness on behalf of the employer, in response to a hypothetical question testified that there existed no causal relationship between the duties of the deceased's employment and the ruptured abdominal aneurysm. Dr. Tillman admitted on cross-examination that cardiologists have a difference of opinion relative to the effect of exertion and whether or not such contributes to aneurysms, coronary attacks or ruptured aneurysms, and further, on cross-examination he agreed with the statement found in the publication by Best and Taylor that "of all physiological conditions, exercise, if of a strenuous nature, has the most powerful effect upon the arterial blood pressure. . . ."

Dr. G. Swink Hicks, a general practitioner and surgeon, called as a witness on behalf of the employer, testified that he was called into the case between seven and eight o'clock on the day Payton was admitted to the hospital. Dr. Hicks also testified that in his opinion there existed no causal connection between Payton's duties of employment and the ruptured aneurysm. However, the record reveals Dr. Hicks readily admitted his inability to express an opinion as an expert when he stated, "I don't claim to be an expert in blood pressure", and further that if he had a patient who was in the process of having an aneurysm rupture he would be scared to let the man out of bed, much less perform work.

Dr. Leo J. Scanlon, Jr., a pathologist, called on behalf of claimant, performed an autopsy on the deceased, Payton, and found he suffered a rupture of the abdominal aorta with a long, slit-like tear approximately five

centimeters in length. A copy of the autopsy was made a part of the record. Dr. Scanlon further testified that Payton had an advanced stage of aortic arteriosclerosis and that the aorta ruptured prior to and shortly before his admission to the hospital, that in his opinion the aneurysm which existed in Payton could not withstand the pressure a normal aorta could.

Dr. E. L. McAmis, a general practitioner called on behalf of the claimant, testified that in his opinion the duties of claimant's employment increased his blood pressure enough to produce the ruptured aneurysm.

After careful consideration of the record we are of the opinion that the overwhelming weight of the evidence shows that the physical labor which the deceased performed on the day of his death aggravated his preexisting condition and contributed to the ruptured aneurysm which caused his death.

It clearly appears from the record that Payton was doing rather heavy manual labor and work for his employer on June 6, 1962, at the onset of the ruptured aneurysm which caused his death on June 7, 1962. The deceased became ill, went to the restroom, returned to the duties of his employment and was described by his co-employees as being ill and appearing pale and white. He was removed from the place of his employment and taken by ambulance to the hospital, where he died the following day.

 █ We recognize the rule of law laid down by this Court that where the Mississippi Workmen's Compensation Commission's order is supported by substantial evidence and is not manifestly wrong the appellate court should not and would not disturb the commission's findings. Sones v. Southern Lbr. Co., 215 Miss. 148, 60 So. 2d 582; Cowart v. Pearl River Tung Co., 218 Miss. 572, 67 So. 2d 356; Boyd Construction Co. v. Worthy, 234 Miss. 671, 107 So. 2d 120. However, this rule of law is applicable only in those cases where the com-

mission's order is supported by substantial evidence, and is not applicable in those cases where there is not proof in the record upon which to base the commission's findings, as in this claim. ■■ ■ The same applies to an order of the circuit court where the order is not supported by substantial evidence, as in the instant case where the circuit court entered an order denying compensation benefits to the appellant. The circuit court's order denying compensation and medical benefits was and is not supported by substantial evidence. Section 6998-01 of the Workmen's Compensation Law, as amended by chapter 275 of Laws of 1960, has imposed upon the court the duty that the ''act shall be fairly construed according to the law and the evidence.'' In construing this amendment we cite L. B. Priester & Son, Inc. v. Dependents of Bynum, 142 So. 2d 30 (Miss. 1962). The Priester case may be compared with Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So. 2d 351.

As stated at the outset, the sole question to be determined was whether or not there existed a causal connection or relationship between the duties of Mr. Payton's employment and the rupture of the aneurysm which resulted in his death.

While each of the physicians testifying on behalf of the employer herein on direct examination gave as their opinion that no causal relationship existed, each on cross-examination readily admitted that there possibly existed a causal connection or relationship, and each acknowledged that the medical text by Best and Taylor is authoritative, and agreed with that portion read to them on direct examination which was as follows:

''Of all physiological conditions, exercise, if of a strenuous nature, has the most powerful effect upon the arterial blood pressure. During the muscular effort or even immediately before, I.e., at the instant that the exertion is contemplated, the systolic pressure com-

mences to rise and may reach a height of 180 or 200 mm. Hg. Except in well-trained persons or athletes, this is invariably associated with a large increase in the heart rate to 150 or 180 per minute. In the trained individual, the blood pressure rise may be quite mild. The diastolic pressure shows a less pronounced rise (100 to 110) so that the pulse pressure is increased. In light exercise the diastolic pressure may remain at the normal level while the systolic rises several millimeters.''

On the other hand, Dr. McAmis, appearing as a witness for and on behalf of the claimant, testified clearly that the work activities increased the deceased's blood pressure enough to produce the ruptured aneurysm.

All of the physicians agreed that had they been aware of the existence of the aneurysm, prior to the rupture, they would not have permitted the deceased to engage in any type activity involving exercise.

■■■ From section 6998-01 of the Workmen's Compensation Law, as amended by chapter 275 of Laws of 1960, and from the evidence in this case, we are of the opinion that in construing the evidence the commission and circuit court were not supported by substantial evidence and are manifestly wrong. From a fair interpretation of the law and the evidence, we are of the opinion and so hold that the claimant is entitled to compensation and benefits under the Workmen's Compensation Law, and the commission is ordered and directed to pay this claim.

Reversed, judgment rendered here for appellant on liability under workmen's compensation act, and remanded to Workmen's Compensation Commission.

*Lee, C. J., and Ethridge, Rodgers and Patterson, JJ.,* concur.