HARBERT CONSTRUCTION CORPORATION, et al. *v.* HUGHES

No. 43196          November 9, 1964          168 So. 2d 506

*Satterfield, Shell, Williams & Buford,* Jackson, for appellants.

*James A. Morrow, Jr.,* Brandon; *L. K. Travis, J. A. Travis, Jr.,* Jackson, for appellee.

Brady, Tom P., J.

The inception of this case was a claim filed by Odis Hughes, the appellee herein, with the Mississippi Workmen's Compensation Commission, hereinafter called Commission, on account of an injury sustained in Rankin County, Mississippi, on August 16, 1961, while he was employed by the appellant herein, Harbert Construction Corporation, hereinafter called Harbert. Harbert was engaged in work on the Pearl River Reservoir Project in Rankin County, Mississippi. The appellee was employed as an oiler and was under a large piece of machinery known as a Euclid dirt mover, when another vehicle pushed the Euclid onto the appellee. Appellee was hospitalized immediately at the Mississippi Baptist Hospital on August 16, 1961, and was discharged therefrom on September 20, 1961. He was treated by Dr. George D. Purvis and Dr. Raymond Martin when he was admitted to the Baptist Hospital on August 16. He

sustained a large laceration of the perineum, which Dr. Martin treated, and while Dr. Martin was repairing the perineum, Dr. Purvis closed a fracture of the left second metacarpal and fixed a splint about the hand. X rays reflected a comminuted fracture of the left pubis and ischium and a fractured dislocation of the left second metacarpal at its base. Appellee was then placed in a pelvic sling suspension for approximately four weeks.

After his discharge from the hospital on September 20, appellee returned to his home and was instructed to remain at bed rest for three weeks, and at the end of that time to go by ambulance to the office of Dr. George D. Purvis for further examination and X ray study. It appears from the record that Dr. Purvis followed him at close intervals, and finally discharged him on April 17, 1962, to return to his usual duties. The record discloses that the association between Dr. Purvis and appellee was of over eight months' duration, extending from August 16, 1961 through April 17, 1962, and that this association was close, which is customary between physician and patient.

The record discloses that Dr. Purvis noted that the appellee resisted most of the tests given, on a voluntary basis; that he did not note any symptoms of involuntary muscle spasm in his back, and that all of the resistance to an examination of his back was of a voluntary nature. The doctor testified that, on the date of his discharge, April 17, 1962, when appellee was last seen, he stated he was doing much better. The appellee reported that he had been doing light work around the house. He complained of pain in his left hand while tightening a bolt overhead, and the doctor further noted that appellee gave to his right leg slightly. The doctor noted furthermore that appellee's hip motions were free and painless bilaterally; the thickened area about the base of the left second metacarpal had disappeared and was no longer tender. He was discharged by Dr. Purvis with

a five to ten percent permanent partial disability, as-cribed because there was some disturbance of the right sacroiliac joint and a minor discomfort in his left hand. Dr. Purvis felt, however, that insofar as his sacroiliac joint injuries and findings were concerned, that they were of such a minor nature that they would not be significant in producing disability to the appellee, for there was no positive record of it. The doctor testified that he believed he had told the appellee, should he have difficulty, to return for further examination and treatment. The appellee never did return. Dr. Purvis testified frankly that he was never able to explain the subjective complaints which were registered by the ap-pellee on the basis of the objective findings, and that in his opinion there was absolutely no reason why the appellee could not perform his usual occupation.

After his final discharge by Dr. Purvis on April 17, 1962 with a five to ten percent permanent partial disability, instead of returning to his regular employ-ment as suggested by Dr. Purvis, the appellee, eleven days later, on April 28, 1962, executed an assignment contract with counsel representing him. On the same date, April 28, appellee's attorney filed the customary compensation form controverting his claim. The first hearing of appellee's claim was conducted on July 26, 1962, at which hearing the appellee testified. Appellee was requested to return to Dr. George S. Purvis, his treating physician, on July 27, 1962, but he ignored the request. Thirteen days later, on August 9, 1962, acting on arrangements made through his attorney, the ap-pellee was examined by Dr. Paul S. Derian. This exami-nation took place fifty-one weeks after the appellee had been injured on August 16, 1961. The record discloses that this is the first time that Dr. Paul S. Derian had seen the appellee, and the record does not disclose that he had acquainted himself with the treatment appellee had received from Dr. Purvis and Dr. Martin.

The second and final hearing before the attorney-referee was held on November 6, 1962, and on December 20, 1962, the attorney-referee entered his order, finding, substantially on the strength of Dr. Purvis' testimony, that the claimant had sustained a fifteen percent permanent disability, and compensation was awarded accordingly. The appellee appealed, and appellants cross appealed, to the Commission, which, by a majority vote on May 8, 1963, increased the award to forty percent.

Dr. Derian testified that from his examination and evaluation the appellee had sustained "(1) direct trauma sacroiliac joint right; (2) Healed fractures of the pelvis; (3) healed fracture of the base of the second left metacarpal; (4) widening of the right sacroiliac joint." Dr. Derian testified from a history obtained from appellee that he was in good health prior to the injury. The doctor gave his objective findings as being, "(1) paravertebral muscular spasm, which is simply increased muscle tone, of the low back muscle. The second objective finding was — reading from record finding — a widening of the right sacroiliac joint; and that is all." Dr. Derian took eleven X rays of the appellee's body and based his objective finding thereon.

Dr. Derian also based his diagnosis and prognosis on the subjective findings of tenderness over the right sacroiliac joint upon palpation with the index finger and upon attendant pain. Dr. Derian further testified: "The findings however, of a widening joint with a history of direct trauma and pain in this location along with paravertebral muscular discomfort points to the permanent nature of this disability." Dr. Derian stated: "A temporary evaluation is that he is unable to return to work and obviously, if he is doing heavy labor, he is unable 100% to carry out this function. At the present time, he is unable to carry out heavy labor — heavy activities. Again, not to hedge, I cannot predict the future ability of this individual."

It is to be noted also that Dr. Purvis first noticed the tenderness over the sacroiliac joint on December 1, 1961, and that Dr. Purvis had not seen the appellee for approximately seven months at the time Dr. Derian testified.

It is obvious that there were sharp conflicts in the testimony of Dr. Purvis and Dr. Derian. Dr. Purvis testified that appellee's resistance was voluntary, and that appellee had no paravertebral muscle spasm. Dr. Derian noted an involuntary resistance and a muscle spasm. Dr. Purvis testified that the widening of the sacroiliac joint was a minute one and the complaints of pain on the part of the appellee could not be explained by objective findings and were out of proportion, while Dr. Derian predicated the cause of appellee's pain upon the widened sacroiliac joint and subjective findings.

Dr. Purvis stated that the X rays upon which Dr. Derian based some of his objective findings did not reflect anything other than what the X rays he had taken of the appellee's injuries showed. Dr. Purvis estimated appellee's permanent partial disability at five to ten percent, and Dr. Derian stated that at the present time appellee was totally disabled from carrying out any heavy duty activities. These are a few, but sufficient, pertinent facts upon which the medical testimony was sharply conflicting. It is also significant that the appellee failed to tell Dr. Derian of the other injuries and suffering he complained of when testifying in his own behalf, and that Dr. Derian knew nothing about appellee's head, neck, shoulder and chest region injuries, and the loss of grip in his left hand, but it does not follow that the appellee's testimony is wholly unworthy of belief. The credibility of appellee's testimony, like that of the two doctors, who constituted all the witnesses who testified regarding the injuries, was for decision by the entire Commission. The Commission is the trier of facts. It observed the witnesses, their attitudes, demeanors,

and heard their testimony. The Commission found that the permanent partial disability of the appellee was forty percent. The decision of the attorney-referee was affirmed, but was modified so as to increase the award from fifteen to forty percent. Claimant, being further dissatisfied, thereupon appealed to the Circuit Court of Rankin County, Mississippi, and the appellants did likewise, and on May 31, 1963 the circuit court affirmed the Commission's findings but modified its award by increasing it to one hundred percent permanent disability. The employer and carrier, appellants here, perfected their appeals, seeking redress of the order and judgment of the Circuit Court of Rankin County and the Commission.

Ten errors were assigned by the appellants in their notice of appeal to the Circuit Court of Rankin County, Mississippi. All these errors assigned were considered by this Court, but it is not necessary for us to specifically analyze each one of them, since many of them are subordinate parts or restatements of errors formerly assigned. Furthermore, the briefs submitted in this case deal specifically with only three errors and, in considering these errors, we examined also the other errors, which we felt required review, for the proper disposition of this case. The three errors which are commended to our attention are:

"1. The Attorney Referee and the Mississippi Workmen's Compensation Commission erred in allowing Dr. Paul S. Derian to testify.

"2. The Mississippi Workmen's Compensation Commission erred in not affirming the award of the Attorney Referee.

"3. The Circuit Court erred in modifying the order of the Mississippi Workmen's Compensation Commission and in not reinstating the decision of the Attorney Referee."

These errors assigned and argued in the briefs of the appellants are controverted by the appellee in his brief. First, appellee denies appellants' contention that Dr. Derian should not have been permitted to testify because appellee failed to comply with the Commission's Rule No. 9; second, appellee contends that the Commission completely failed to comprehend the functional disability aspects of the claim and that its award did not conform to, and was not supported by, the evidence; and third, appellee contends that the Circuit Court of Rankin County was eminently correct in modifying the order of the Commission in all respects and should be affirmed for the reason that the small award made by the Commission was manifestly wrong and not supported by the evidence.

It is not necessary, and we do not determine the merits of the first error assigned for the reason that the record fails to disclose that the appellants were deprived of any rights, or that their rights were prejudiced by the failure of appellee to give written notice that Dr. Derian would be used as a witness, under the provisions of the Commission's Rule No. 9.

The immediate question presented by the appellants in their appeal is: Did the circuit court err in modifying the order of the Commission by increasing appellee's award to one hundred percent permanent disability, and not in affirming the order of the attorney-referee, or the order of the Commission?

As already indicated, the Commission is the trier of facts, and we have consistently and repeatedly so held. This responsibility rests upon the entire Commission and not upon the attorney-referee. Fair Stores v. Bryant, 238 Miss. 434, 118 So. 2d 295 (1960); Gaines v. McCormick, 238 Miss. 535, 117 So. 2d 467 (1960); Wilson Furniture Co. v. Wilson, 237 Miss. 512, 115 So. 2d 141 (1959); Boyd Constr. Co. v. Worthy, 234 Miss. 671, 107 So. 2d 120 (1958); Grubbs v. Revell Furniture

Co., 234 Miss. 319, 106 So. 2d 390 (1958); Cole v. Superior Coach Corp., 234 Miss. 287, 106 So. 2d 71 (1958); Freeman v. Mississippi Power & Light Co., 230 Miss. 396, 92 So. 2d 658 (1957); Russell v. Southeastern Util. Serv. Co., 230 Miss. 272, 92 So. 2d 544 (1957); Malley v. Over The Top, Inc., 229 Miss. 347, 90 So. 2d 678 (1956); California Eastern Airways, Inc. v. Neal, 228 Miss. 370, 87 So. 2d 895 (1956); Williams Bros. Co. v. McIntosh, 226 Miss. 553, 84 So. 2d 692 (1956); Southern Eng'r. & Elec. Co. v. Chester, 226 Miss. 136, 83 So. 2d 811 (1955); Mississippi Prods., Inc. v. Gordy, 224 Miss. 690, 80 So. 2d 793 (1955); Dowdle & Pearson, Inc. v. Dependents of Hargrove, 222 Miss. 64, 75 So. 2d 277 (1954); Railway Express Agency v. Hollingsworth, 221 Miss. 688, 74 So. 2d 754 (1954); and Smith v. St. Catherine Gravel Co., 220 Miss. 462, 71 So. 2d 221 (1954).

It is to be noted that the Commission affirmed the findings of fact of the attorney-referee, and the circuit court did likewise, except that the Commission disagreed with the attorney-referee's finding of only fifteen percent permanent partial disability and increased it to forty percent, while the circuit court affirmed the Commission's findings of fact except it increased the forty percent award to one hundred percent.

The decisive question before us for solution is therefore whether or not the decision and order of the Commission is supported by substantial evidence. We hold that it is so supported. The attorney-referee made three specific findings of fact:

"1. That claimant's (appellee's) average weekly wage at the time of injury was $74.50;

"2. That claimant reached maximum improvement from medical treatment on April 17, 1962;

"3. Claimant has sustained a 15% loss of wage earning capacity as a result of the injury."

██ ██ The Commission and the circuit court are in accord with the findings of the attorney-referee insofar

as findings of fact 1 and 2 are concerned. The only difference in the findings of all three tribunals relates only to fact 3 — the amount of disability sustained by the appellee. The amount of disability sustained by the appellee was found by the Commission to be forty percent. We hold that this finding of forty percent is based on substantial evidence, and will not be disturbed. In Kennedy v. Williams-McWilliams Indus., Inc., 247 Miss. 595, 156 So. 2d 806, 809 (1963), we held: ". . . where a finding of the Commission on a disputed question of fact is supported by substantial evidence, the Court is not authorized to reverse its judgment. . . ."

In Jackson Oil Prods. Co. v. Curtis, 241 Miss. 188, 129 So. 2d 403, 404 (1961), the Court stated:

"It is settled that the Commission is the trier of fact. Fair Stores v. Bryant, 238 Miss. 434, 118 So. 2d 295. There was much evidence pro and con and upon conflicting evidence the Commission, as stated, held that the widow was entitled to compensation."

In Capital Broadcasting Co. v. Wilkerson, 240 Miss. 64, 126 So. 2d 242, 244 (1961), the Court stated:

"The testimony in this case is conflicting between the claimant's witnesses and the witnesses of the defendant as to causal connection of claimant's illness, to his work. This Court has repeatedly held that the Workmen's Compensation Commission is the trier of facts, and on appeal the Commission's order will be respected, and if supported by substantial evidence will be sustained."

In Tanner v. American Hardware Corp., 238 Miss. 612, 119 So. 2d 380, 381-82 (1960), the Court stated:

"We think that there were ample circumstances to make an issue for the triers of fact as to whether the testimony of the claimant and his witnesses should prevail over the circumstances hereinbefore referred to."

In determining the facts, the Commission has authority to evaluate all pertinent facts which relate to the injury, to the compensation, and to the disability,

if any. After carefully reviewing all of the testimony and evidence in this cause we cannot say that there was not credible and substantial evidence upon which the Commission could and did properly base its determination of the forty percent disability award. ██ ██ Since the Commission's finding was supported by substantial evidence, it therefore became the duty of the circuit court to affirm the award, and we fail to find any prejudicial error in the award of the Commission. Miss-Lou Equip. Co. v. McGrew, 247 Miss. 142, 153 So. 2d 801 (1963); Southeastern Constr. Co. v. Dependent of Dodson, 247 Miss. 1, 153 So. 2d 276 (1963); Jackson Oil Prods. Co. v. Curtis, 241 Miss. 188, 129 So. 2d 403 (1961); and California Eastern Airways, Inc. v. Neal, 228 Miss. 370, 87 So. 2d 895 (1956).

██ ██ Finally, we conclude, contrary to the assertions of the appellants, that the disability suffered by the appellee is supported by sufficient medical findings to permit the Commission's award to stand.

██ ██ This Court has the duty, as was pointed out in Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So. 2d 351 (1959), to check any fundamental erroneous exercise of administrative power, so as to require the application of the Workmen's Compensation Law in a just and reasonable manner.

The increased disability award of the circuit court is not justified or supported by substantial evidence, and therefore the circuit court judgment is reversed and the order of the Commission allowing forty percent permanent partial disability is affirmed and reinstated.

Reversed and order of Commission reinstated.

*Lee, C. J., and McElroy, Rodgers and Jones, JJ.,* concur.