480 So.2d 1080 (1985)
Lewis MYERS and a Mississippi Attorney
v.
MISSISSIPPI STATE BAR.
Misc. No. 50.
Supreme Court of Mississippi.
July 10, 1985.
Rehearing Denied January 8, 1986.
*1082 John L. Walker, Walker & Walker, Jackson, John Brittain, West Hartford, Conn., Fred L. Banks, Jr., Banks & Nichols, Jackson, for appellant.
Andrew J. Kilpatrick, Jr., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and HAWKINS and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
This appeal springs from the actions of a complaint tribunal of the Mississippi State Bar which entered an order imposing a two-year suspension from the practice of law on Lewis Myers, and a private reprimand upon another Mississippi Attorney. From these judgments, Myers appeals, asserting that the complaints tribunal erred in:
1. Overruling his numerous due process objections to the entire course of disciplinary proceedings;
2. Finding that the bar had met its burden of clear and convincing proof;
3. Finding that he violated any of the disciplinary rules cited by the tribunal; and
4. Imposing any punishment of any type.
The Mississippi Attorney joins in Myers' due process objections and also asserts that the complaint tribunal erred in:
5. Holding him responsible for any of the violations in the complaint where he had no attorney/client relationship with Moawad; and
6. Imposing a reprimand upon him for charges not specified in the formal complaint.
The bar cross-appeals, assigning as error the trial court's failure to order the disbarment of both attorneys.
Myers was licensed to practice law in Mississippi in 1972. From that time until April, 1976, Myers was director of litigation at North Mississippi Rural Legal Services in Oxford, Ms. He left Mississippi in April, 1976, and later moved to Chicago, Illinois, where he was admitted to that State's bar by reciprocity supported by the original license to practice law granted by the state of Mississippi. Myers is affiliated with several organizations and is an adjunct professor of law with DePaul University School of Law in Chicago.
The Mississippi attorney was licensed to practice law in Mississippi in 1973. He was employed as the executive director of North Mississippi Rural Legal Services in Oxford, Mississippi. Myers was in a subordinate position in that organization to the Mississippi attorney.
In November, 1975, Gary Moawad lived in North Mississippi. He was born and reared in Egypt. Moawad had consulted with the Mississippi attorney concerning immigration problems facing other members of Moawad's family. The Mississippi attorney arranged for the immigration of *1083 Moawad's family into the United States and thereafter became Moawad's personal friend and confidant.
On November 13, 1975, Moawad killed his father in law and assaulted two other members of his wife's family. Moawad then went to Legal Services offices in Oxford, to confer with and obtain legal assistance from the Mississippi attorney. The Mississippi attorney was not present in the office at that time and, in his absence, Moawad conferred with Myers. Myers convinced Moawad to surrender to the police and assured him that he would serve as Moawad's attorney. Myers accompanied Moawad to the jail in Oxford, where he was first incarcerated.
Myers agreed to represent Moawad on the charges and was primarily responsible as Moawad's chief trial counsel. He signed all pleadings and was present for all pre-trial motions, throughout the entire trial, and he made all significant tactical decisions. Assisting Myers in the defense team were John Jackson, a staff attorney at Legal Services, and Tom Morris, a Cleveland attorney. Leonard McClellan, not then licensed in Mississippi, also participated in the pre-trial and trial defense. Myers was the chief trial counsel in this team, although some of their decisions were collective.
In December, 1975, Myers was offered employment in a highly publicized criminal trial in the northeastern United States. This trial was to begin in April, 1976, and was projected to last about six months. Myers, therefore, arranged for a leave of absence from Legal Services. He also discussed the matter with Moawad, who said that he wanted Myers to arrange for his trial to take place prior to the departure of Myers. Myers, therefore, filed a motion for speedy trial.
As his trial date approached, Moawad expressed serious reservations about whether or not his case would be prejudiced by the fact that he was represented by black lawyers. In February, 1976, Moawad conversed with a white Mississippi attorney about representing him. This attorney was not employed at the time because no financial arrangements could be concluded.
The charges against Moawad were consolidated and brought on for trial in March, 1976. Following a three-day trial, the jury returned a verdict at approximately 10:00 p.m. on the night of March 31, 1976. Moawad was found guilty on all three charges and received a life sentence for the murder conviction, a 20-year sentence on the aggravated assault conviction, and a 5-year sentence on the second aggravated assault conviction, with all sentences ordered to run consecutively. On March 31, 1976, judgments in each of these cases were entered.
Immediately following the announcement of the jury verdict, Moawad discussed the case with Myers and his associates. The substance of this 10-minute conversation is the most hotly disputed factual issue in this case.
1. Moawad: Myers and the Mississippi attorney said they would take care of me, that they would make a motion for another new trial. Of course I wanted an appeal. They said if the motion was denied, they would appeal it to the Mississippi Supreme Court.
I did not tell Myers and the others that I did not want them to handle the case further or that I wanted a white lawyer. I did not tell them that I did not want them to proceed any further. I did not tell them that I had another attorney to handle my case.
2. John Jackson: After the verdict, Moawad told us he did not want us to proceed with his case any further. He said that he had someone else. Myers told Moawad that he would make his files available to Moawad but that Moawad would have to be diligent because there were time limitations for an appeal. Moawad fired us as a team en masse.
3. Tom Morris: Moawad told me he had conferred with a white lawyer about handling his appeal. I left after closing *1084 arguments and was not present for the appeal discussions.
4. Lewis Myers: While the jury was out Moawad told me that if things went bad I had to go. I informed Moawad of his right to appeal, and that a motion for a new trial had to be filed. We were at the end of the court term and Moawad was aware of the time limits. He gave me the impression that he had somebody ready to come in. He was concerned that we not even put our names on anything else or have anything else to do with his case.
I explained to Moawad what a motion for a new trial was. It was particularly with reference to the new trial that Moawad did not want us to do anything. I did not make a motion in a manner to allow successor counsel to take up the appeal in due course because I understood my dismissal was mandatory.
5. Leonard McClellan: There was a 10-minute conversation after the verdict where Moawad congratulated Myers on the trial and regretted his inability to pay him. The appeal was discussed. Moawad was in the process of getting another lawyer to prosecute the appeal. I am not sure whether the firing took place on the night he was convicted or earlier, but it was definite by that night.
6. The Mississippi Attorney: When the jury came back, I may have approached Moawad with a word of condolence. I recall leaving there with the distinct impression that he did not expect any of the attorneys who had handled that case to move any further on the case.
Within two days after the verdict against Moawad was rendered, Myers left the state to prepare for the lengthy criminal trial in the northeast. He filed no motion for a new trial, or a notice of withdrawal of representation. Prior to his departure, Myers did not give any specific instructions to the staff at Legal Services as to the future of the Moawad case.
At the time of Moawad's trial, the local circuit court rules did not cover withdrawal of counsel and no order authorizing Myers' withdrawal was ever entered in the proceedings.
The March 1976 term of circuit court was concluded by the closing of the Minutes on April 1, 1976. On April 12, 1976, eleven days after the court had adjourned, a motion for a new trial in Moawad's case was filed. This motion bears the purported signature of Myers, but the uncontradicted proof was that Myers was not aware of the filing of this motion. The motion was prepared and filed by Leonard McClellan, who worked at Legal Services and had assisted in Moawad's trial. At the time of the filing, McClellan did not then possess a license to practice law in this state. McClellan had received an urgent message on behalf of Moawad that the attorney Moawad thought would prosecute his case had refused to go forward. McClellan, therefore, drafted the motion for a new trial and signed the name of Lewis Myers on the motion and caused it to be filed.
On July 6, 1976, McClellan wrote Moawad advising him that a motion for a new trial had been filed, stating that the letter was written on behalf of Mr. Myers. Mr. Myers had no knowledge of this letter.
On March 1, 1977, the Mississippi Attorney wrote Moawad that no hearing on the motion for a new trial had been held. On April 6, he wrote Moawad that the motion for a new trial had been denied and that an appeal was being prepared and that "we [Legal Services] are committed to doing all we can on your behalf". For some unknown reason, the motion for a new trial which had been filed on April 12, 1976, was not heard until March 3, 1977, almost one year later. The motion was overruled as having been filed untimely.
Approximately one year later, on April 15, 1977, Moawad filed a pauper's oath in lieu of an appeal bond.
On July 27, 1977, the Mississippi Supreme Court upon hearing the state's motion to docket and dismiss the appeal, ordered the appeal dismissed.
On October 23, 1978, Moawad filed a complaint with the Mississippi Bar against *1085 Myers and the Mississippi Attorney alleging that they failed to timely appeal his conviction. An investigatory hearing was held where Myers, Morris and the Mississippi Attorney appeared and gave testimony.
Complaint counsel filed a report on March 6, 1979. The complaints committee, on April 5, 1979, considered the complaint filed against Myers and the Mississippi attorney and decided to issue a public reprimand for failure to file an appeal or properly withdraw as counsel.
On April 10, 1979, the complaints committee informed Myers and the Mississippi Attorney by letter that it was their opinion that the attorneys failed to take the steps necessary to protect Moawad's right to an appeal. The committee letter stated that Moawad's attempt to discharge them did not relieve them of their responsibility of protecting his rights to an appeal, nor was there any indication that they had notified or sought approval from the court of their withdrawal.
The letter further informed Myers and the Mississippi Attorney that the committee as a matter of policy afforded to an attorney to whom the committee determined to administer a public reprimand the option of requesting that the matter be referred to a complaint tribunal to conduct a hearing where an accused attorney would have an opportunity of confrontation and cross-examination. Both lawyers requested a hearing before the complaint tribunal.
On April 23, 1979, the complaints committee informed complaints counsel that there was reasonable cause to believe that both attorneys were "guilty of such conduct which if proven would warrant suspension or permanent disbarment." The letter directed complaints counsel to file a formal complaint against Myers. On May 7, 1979, Myers and the Mississippi Attorney wrote the chairman of the complaints committee objecting to the finding and directive contained in the April 23rd letter and requested that the same be withdrawn. The committee responded that its referral to the tribunal was not in the nature of an appeal, nor did the committee have the power to restrict the sanctions which the tribunal by law could impose. These sanctions included the power to dismiss the complaint, to issue a reprimand either public or private, or to enter a judgment of suspension or disbarment.
On May 22, 1979, a formal complaint was filed. Count 1 charged that Moawad lost his right to an appeal through the failure by Myers and the Mississippi Attorney to timely file a motion for a new trial and notice of appeal in violation of DR 1-102(A)(5-6), [conduct prejudicial to the administration of justice, conduct adversely reflecting on fitness to practice], DR 6-101(A)(2-3), [inadequate preparation, neglect of legal matter entrusted], and a default of record under Miss. Code Ann. § 73-3-53 (1972).
Count 2 charged that Myers and the Mississippi Attorney took no action after Moawad "fired" them to receive permission to withdraw as counsel, in violation of DR 7-101(A)(1-3), [failure to seek lawful objectives, carry out contract of employment, and prejudice and damage a client], DR 2-110(A)(1-2), [failure to obtain required permission to withdraw from employment, failure to take steps to avoid foreseeable prejudice].
Count 3 charged that if the tribunal finds that Moawad gave no such instructions, then Myers and the Mississippi Attorney are guilty of false swearing, deceit and misrepresentation under DR 1-102(A)(3-4), and self-exoneration under DR 6-102(A).
On October 1, 1979, the Mississippi Attorney filed a separate answer denying any responsibility or involvement in representing Moawad in the criminal charges. He also alleged that the complaints committee failed to advise him that if he elected to have the matter referred to the complaint tribunal then the committee would make a finding under Miss. Code Ann. § 73-3-319(c), recommending suspension or disbarment, rather than under subsection (b), recommending reprimand. The Mississippi Attorney alleged that the policy violated due process.
On October 8, 1979, Myers filed a separate answer generally denying the allegations *1086 and asserting non-compliance by the complaints committee with a 30-day period within which to file a formal complaint after receipt of complaint counsel's report, under Miss. Code Ann. § 73-3-319. Myers denied that he filed the motion for a new trial but admits that he did not advise the court nor seek permission from the court to withdraw because he believed it was not necessary. Myers also asserted that the "policy" of accepting discipline or facing the tribunal violated due process and was also neither authorized nor sanctioned by statute or by Supreme Court rule.
On January 13, 1981, the complaint tribunal held a hearing on the pre-trial motions filed by both attorneys where testimony was taken from the then chairman of the complaints committee concerning the policy in issue and the standards for imposing discipline. The tribunal withheld making a decision pending this Court's decision in Netterville v. Mississippi State Bar, 397 So.2d 878 (Miss. 1981), involving similar issues.
Following Netterville, the complaint tribunal overruled both attorneys' motion to dismiss.
On August 10, 1982, the hearing on the merits took place before the complaints tribunal. On December 22, 1982, the complaint tribunal issued separate opinions and orders with respect to Myers and the Mississippi Attorney. In both opinions, the tribunal found Moawad's version of the post-trial conference to be the more convincing.
The tribunal found that Myers could not withdraw from the case and terminate his duties to Moawad merely on the ground that no local court rule required a court order allowing counsel to withdraw. The tribunal found that Myers failed to take necessary steps as required by DR 2-110(A)(2) to avoid foreseeable prejudice to the rights of his client including giving the client due notice and allowing time for the employment of other counsel. The tribunal characterized Myers' actions as an abandonment of the case at a critical stage without reasonable notice to his client and without any notice to the court. The tribunal found that the Bar had met the burden of proof of clear and convincing evidence. The tribunal further found that all due process rights required by Netterville were extended to Myers. The tribunal ordered that Myers be suspended from the practice of law for two years. One tribunal member dissented on the ground that the 2-year suspension was too lenient and that the appropriate punishment was disbarment.
As for the Mississippi Attorney, the tribunal found that he was guilty of neglect of representation of Moawad. The tribunal found, as the Mississippi attorney had contended, that the Mississippi Attorney did not undertake any direct trial responsibility for Moawad, and that no attorney/client relationship existed between the Mississippi Attorney and Moawad. The tribunal did find, however, that Legal Services as an entity undertook to furnish adequate representation to Moawad. After the departure of Myers, the Mississippi Attorney did not appoint a successor or take any other steps, all to the serious prejudice of Moawad's rights.
The tribunal found that the Mississippi Attorney could not insulate himself from the responsibility by contending that the only attorney/client relationship was between Myers and Moawad. The tribunal found that the Mississippi Attorney's position in Legal Services was closely akin to the head of a private law firm when another member of the firm is unable to complete handling a matter for a firm client.
In mitigation, the tribunal found that Myers was primarily responsible for the misconduct and the Mississippi Attorney's derelictions were principally the result of poor communications and supervision with in Legal Services. The Mississippi Attorney was, accordingly, given a private reprimand.

LAW

I.

DUE PROCESS
Both appellants jointly assert six procedural irregularities in the disciplinary proceedings, *1087 which they claim violated their right to due process of law. They assert a seventh and eighth due process violation separately.

A.

NETTERVILLE RIGHTS WERE VIOLATED AT THE INVESTIGATORY STAGE
Netterville v. Mississippi State Bar, 397 So.2d 878, 884 (Miss. 1981), established that an accused attorney who is the subject of a complaints investigation is entitled to the due process rights of (1) confrontation and cross-examination of his accusors; (2) offering witnesses on his own behalf; and (3) proof of the charges against him by clear and convincing evidence. In the case sub judice, Moawad did not appear at an investigatory hearing, thus Myers and the Mississippi Attorney were clearly deprived of their right to confront and cross-examine their accusor at the investigatory stage. The burden of proof was not stated in the letter imposing the public reprimand, but in the letter referring the complaint to the tribunal, the committee found that there was "reasonable cause to believe" that the charges warranted suspension or disbarment. Netterville rejected the "reasonable cause" standard of evidence and held that the committee must find that the guilt of the accused attorney has been established by clear and convincing evidence.
Appellants contend that the complaints against them should be dismissed with prejudice because the formal complaint against them was a direct result of procedures which denied them due process of law. Appellants invoke Wong Sun v. United States, 371 U.S. 471, 484-86, 83 S.Ct. 407, 415-16, 9 L.Ed.2d 441 (1963).
This contention betrays a misreading of Netterville, which clearly applies only to future proceedings and Netterville cannot be invoked retroactively to invalidate proceedings which pre-dated that decision, as this case does. Furthermore, any harm resulting from the deprival of these rights was eliminated when the tribunal, following the Netterville decision, allowed both attorneys to confront and cross-examine Moawad and to present witnesses on their behalf. Furthermore, the tribunal's findings of misconduct employed the "clear and convincing" burden of proof which is required by Netterville.
We repeat for emphasis, Netterville is to be applied prospectively only and not retroactively. Both attorneys in this case, however, received the benefits of Netterville when the complaint tribunal met the requirements of that case. There is no merit to this assignment of error.

B.

IS § 73-3-319 VOID FOR VAGUENESS?
The thrust of this argument by the appellants is that their due process rights were violated because the committee on complaints, when it received the complaint counsel's report, had the option pursuant to § 73-3-319, to either: (a) dismiss the complaint; (b) issue a private or public reprimand; or (c) issue a directive to the complaint counsel to file a formal complaint; and the committee used no formal standards in deciding which course of action to follow.
At the preliminary hearing on this issue, the committee, through one of its members, testified that there had been developed no policy or standard governing which of the options in the statute the committee chooses to follow. The thrust of the committee member's testimony was that the committee tries to fit the discipline to the deed on a case-by-case basis.
In A Mississippi Attorney v. Mississippi State Bar, 453 So.2d 1023 (Miss. 1984), the Bar conceded that it had no standard as to what ought to be the punishment for particular misconduct and that cases were considered on a case-by-case basis. This Court said: "That is as it should be and we seek to impose no standard here." 453 So.2d at 1028.
*1088 The appellants' vagueness challenge is without merit. The testimony establishes that, while no specific guidelines exist as to what action the committee ought to take, the committee decisions are informed by the considerations in the code of professional responsibility and other practical factors peculiar to the case. These factors and guidelines afford sufficient legal guidance to the committee to obviate the danger of arbitrary or discriminatory enforcement of the code of professional responsibility. There is no merit to this assignment.

C.

IS REFERRAL POLICY UNAUTHORIZED BY STATUTE OR BY THE SUPREME COURT?
The "policy" in question was adopted by the complaints committee on July 15, 1977, and recorded on the minutes as follows:
A motion was ... unanimously adopted to offer all attorneys receiving a public reprimand an opportunity to take the reprimand or, if desiring an adversary proceeding, the committee on complaints will file the complaint with the Mississippi Supreme Court.
The appellants raise objections grounded in principles of administrative law. They argue that administrative agencies such as the complaints committee have only such powers as are expressly granted them or necessarily implied, and any such power exercised must be found within the four corners of the statute under which the agency operates. Strong v. Bostick, 420 So.2d 1356, 1361 (Miss. 1982); Ms. Milk Commission v. Winn-Dixie, 235 So.2d 684 (Miss. 1970).
Appellants contend that nowhere in the statute or anywhere else does the legislature authorize the complaints committee to adopt such a policy. Further they complain that this policy was not subsequently submitted to the Supreme Court for approval. See Matter of Mississippi State Bar, 361 So.2d 503 (Miss. 1978). The appellants also claim that the committee's actions did not comply with their own minutes because the minutes did not authorize the committee to withdraw a reprimand recommendation under § 73-3-319(b) and issue in its place a formal charge pursuant to subsection (c).
The appellants seek to attack a policy of the Bar which afforded the appellants due process in a pre-Netterville setting to which the appellants consented. Section 73-3-307 (Supp. 1984), empowers the disciplinary agencies with such "jurisdiction and lawful powers as are necessary to conduct the proper and speedy disposition of any complaint."
The complaints committee has the inherent authority to provide for procedures whereby adverse decisions can be appealed to a disciplinary tribunal, subject to statutory limitations. The committee read § 73-3-319 as it then existed to require any formal complaint to allege that the conduct in question warranted suspension or disbarment. Inasmuch as the tribunal has the authority to review the facts de novo and impose whatever sanction it deems appropriate, whether lesser or greater, the mere inclusion of allegations concerning suspension or disbarment did not have any binding effect upon the tribunal. This is clearly evident in the case of appellant a Mississippi Attorney, whose public reprimand was reduced by the tribunal to a private reprimand. Therefore, the attack based on administrative law principles is without merit.

D.

SHOULD THE 1981 AMENDMENTS TO § 73-3-319 BE APPLIED?
Appellants take the not unreasonable position that their sole reason for consenting to the committee's referral of the complaint to a complaints tribunal was to review the imposition of that specific sanction only. They argue that they were completely unaware that if they exercised this option, the committee could or would recommend suspension or disbarment.
*1089 These same objections were raised in a preliminary hearing before the tribunal and the tribunal's decision, dated July 7, 1982, overruled these objections to this referral policy. Approximately one year earlier, the legislature amended § 73-3-319 [Laws 1981, Ch. 480, § 1] to provide that "any decision of the complaint tribunal to issue a reprimand shall be appealable in the same manner and to the same extent as provided in § 73-3-329." This amendment took effect from and after July 1, 1981. § 73-3-329 authorizes an aggrieved party to appeal the reprimand below to the Supreme Court.
Relying upon Walls v. Mississippi State Bar, 437 So.2d 30 (Miss. 1983), the appellants take the position that amendments to rules and statutes occurring during the course of proceedings are to be applied in the proceedings as if they were in effect at the beginning of the proceedings. In Walls, this Court took into consideration the modification of a canon of ethics on which the charges were based. Id. at 33. The appellants likewise argue that the tribunal erred when it failed to take into consideration the modification of § 73-3-319 to provide for a direct appeal to the Supreme Court of an order imposing a public reprimand.
It should be noted that no one brought to the tribunal's attention the fact that the statute had been amended to allow for a direct appeal to the Supreme Court from the imposition of a public reprimand. The appellants contend that they were seriously prejudiced by the recommendation that the conduct warranted suspension or disbarment.
The appellants are correct that the tribunal should have applied the statute as amended to the public reprimand. However, the appellants did not bring the amendment to the attention of the tribunal. Furthermore, this claim is rendered moot by the fact that this Court reviews disciplinary proceedings de novo, including the sanctions imposed. A Mississippi Attorney v. Mississippi State Bar, supra at 1028; Mississippi State Bar v. Phillips, 385 So.2d 943 (Miss. 1980). In other words, this Court remains free to reevaluate the sentence regardless of whether the matter was brought on appeal from a public reprimand under the amended statute or on appeal from a suspension and private reprimand under the pre-amendment "policy".

E.

DID THE COMMITTEE RETALIATE BY RECOMMENDING HARSHER SANCTIONS TO THE TRIBUNAL?
Both attorneys argue that the committee punished them for exercising their right to a de novo hearing before the tribunal by recommending to that tribunal that they be suspended or disbarred. Substituting this much more serious recommendation for the public reprimand is precluded by the due process clause, according to the appellants, under Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). In Perry, an inmate exercised his right to a trial de novo on a misdemeanor assault charge whereupon the prosecutor obtained an indictment charging him with felony assault. The court held that the fear of vindictiveness unconstitutionally deterred a defendant's exercise of his right to trial de novo. Id. at 27, 94 S.Ct. at 2102, 40 L.Ed.2d at 634. The court noted that the case would be entirely different if the state had shown that it was impossible to proceed on the more serious charge at the outset, e.g. when an assault victim dies. See Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). [Id. 417 U.S. at 29, 94 S.Ct. at 2103, 40 L.Ed.2d at 635, n. 7].
Perry was applied to invalidate the prosecution of a Mississippi defendant for manslaughter, following his invocation of his statutory right to appeal his misdemeanor convictions for a trial de novo. Thigpen v. Roberts, 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984). The court held that it made no difference that the misdemeanor proceedings were handled by the county prosecutor, whereas the felony indictment was obtained by the district attorney; the presumption of vindictiveness remained because *1090 the county prosecutor participated fully in the manslaughter trial.
There is no presumption of vindictiveness in this case because the appellants were tried by a separate and independent court on the identical misconduct charges, and any enhancement of sentence is solely attributable to that court's independent assessment of the suitable penalty. In Colten v. Kentucky, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the court refused to apply the presumption of vindictiveness rule where an enhanced sentence was imposed by a different court after a trial de novo on the same charge. The record in this case gives further credence to the absence of a retaliatory motive by the committee in recommending suspension or disbarment to the tribunal, if only because of the understanding of the committee at that time that the tribunal's power to hear complaints was limited to those cases warranting suspension or disbarment.
Adding weight to the position of the Bar on this issue is the fact that the appellant A Mississippi Attorney actually received a lighter sentence from the complaints tribunal than he did before the complaints committee.
This assignment of error is without merit.

F.

ARE STATUTORY TIME LIMITATIONS JURISDICTIONAL?
Maryland State Bar Association v. Frank, 272 Md. 528, 325 A.2d 718 (1974), held that the time limitations of prosecuting a charge on professional misconduct were directory rather than jurisdictional. Rule 26 of the Rules of Discipline of the Mississippi State Bar states:
References to time within these rules and procedural sections are directory and not jurisdictional. Time limitations are administrative, not jurisdictional; however, the time for filing appeals or seeking reinstatement shall be jurisdictional. Failure to observe directory time interval may result in contempt of the agency having jurisdiction but will not justify abatement of any disciplinary investigation proceeding.
Furthermore, there is well reasoned authority that disciplinary proceedings are pursued and should be pursued at a cautious pace because of the serious effects upon practitioners. See Kelly v. Greason, 23 N.Y.2d 368, 296 N.Y.S.2d 937, 244 N.E.2d 456 (1968); and Florida Bar v. Wincor, 257 So.2d 247 (Fla. 1971).
We point out that the delays in holding the tribunal hearing in this case were due in part to awaiting the pending Netterville decision of this Court.
We are of the opinion that the Bar is correct in asserting that the time limitations in § 73-3-319 and 325 are directory rather than jurisdictional. A 17-day delay in the filing of a formal complaint does not justify dismissal of the complaint. Nor does the more protracted delay in holding the tribunal hearing appear to have prejudiced appellants when in some instances they themselves requested delays and in one instance the delay was due to a material case pending before the Supreme Court. Strict construction of statutory time limits seems much more appropriate in election contests and non-tenured teacher dismissals than in the more cautious context of attorney disciplinary proceedings.
We affirm on this point.

G.

MUST TRIBUNALS SPECIFY ADDITIONAL CONDUCT WARRANTING INCREASED PENALTY?
Attorney Myers argues that the tribunal radically increased his punishment from a public reprimand to a 2-year suspension without specifying conduct subsequent to the reprimand which warranted the increase in penalty. He relies upon North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), wherein the court held that due process requires a judge who imposes a more severe sentence upon a defendant after a new trial to identify *1091 factual data upon which the increased sentence is based.
We need look no further than the opinion and order detailing the conduct which the tribunal found to be objectionable to answer this assignment. The tribunal possesses, as does this Court, the authority to re-assess what would be the suitable punishment for the conduct in question. The tribunal has complied with Pearce in that its imposition of a two-year suspension was based upon a record which more fully developed the egregious nature of Myers' conduct in neglecting Moawad's appeal. This record, together with the tribunal's authority to impose a more severe sentence where warranted, distinguishes this case from Pearce.
This assignment of error by Myers is incorrect.

H.

WAS THE MISSISSIPPI ATTORNEY PUNISHED FOR CONDUCT NOT SPECIFIED IN THE COMPLAINT?
Appellant A Mississippi Attorney argues that the tribunal erred when it found him not guilty of the charges of failure to file motions and failure to notify the court of withdrawal, but found him guilty of a substantially different charge, namely failure to assign other Legal Services personnel to perfect the appeal. The Mississippi Attorney relies upon In re Corace, 390 Mich. 419, 213 N.W.2d 124 (Mich. 1973), where the court held that a lawyer cannot be disciplined on the basis of findings of wrongdoing not charged in the formal complaint. There the complaint charged the attorney with causing an unauthorized signature, and the committee disciplined him for failure to explain unauthorized conduct by a clerk. The basis for the holding in In re Corace is the observation in In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), that "the absence of fair notice as to the reach of the grievance procedure and precise nature of the charge deprived petitioner of procedural due process." (emphasis added).
The Mississippi Attorney argues that he was charged with representing Moawad and in failing to perfect his appeal or give notice of withdrawal. He defended that charge on the grounds that no attorney/client relationship existed between him and Moawad. The tribunal then found him guilty of failing to adequately administer Legal Services which, as an entity, undertook to represent Moawad. As a result, the attorney failed to put on additional evidence regarding the exact scope of his responsibility, efforts to assure adequate supervision of the attorneys, and the general policies of Legal Services.
In this assignment of error, the Mississippi attorney who received the private reprimand from the complaints tribunal is correct. This assignment of error is controlled by our recent decision in Misc.No. 169, A Mississippi Attorney v. Mississippi State Bar, not yet published. Because the Mississippi Attorney was reprimanded on charges substantially different from those investigated and formally filed without being provided with a hearing and the right to defend on that specific charge, this assignment of error has merit and, as to the Mississippi Attorney, the finding of the tribunal is reversed and remanded to the Mississippi State Bar.

II.

SUFFICIENCY OF THE EVIDENCE
Myers' assertion that the evidence was insufficient to warrant discipline is based upon the propositions (a) that Mississippi law does not require an attorney to receive permission of court to withdraw from representation; (b) Moawad's testimony as a whole is not clear and convincing evidence of misconduct, and (c) that the punishment is unwarranted. The Mississippi Attorney's assertion of error is that (d) he may not be disciplined in the absence of an attorney/client relationship with Moawad.

A.

IS COURT PERMISSION TO WITHDRAW REQUIRED IN MISSISSIPPI?
The tribunal rejected Myers' assertion that he could withdraw from the case simply *1092 by agreeing with Moawad without notice to or permission of the circuit court. The tribunal cited Fairchild v. GMAC, 254 Miss. 261, 179 So.2d 185 (1965), as making clear that before counsel may withdraw from a litigated matter "both reasonable notice to the client and permission of the court are essential. Mississippi Rules of Professional Conduct No. 44 (1962), 33 MLJ 461 (1962); 7 Am.Jur.2d Attorneys at Law §§ 143, 144-45, 221-22 (1963)." Id. at 265, 179 So.2d at 186.
The tribunal also relied upon DR 2-110(A), which states:
(1) If permission for withdrawal from employment is required by the rules of a tribunal, a lawyer shall not withdraw from employment in a proceeding before that tribunal without its permission.
(2) In any event, a lawyer shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules.
Myers responds that permission of court is required under DR 2-110(A) only where that permission is required by the rules of the court in question, and there was no local rule in the circuit court of the county in which this case was tried which required notice of withdrawal.
An attorney is not free to disregard a requirement of court permission for withdrawal established by the case law of this state simply because there is no published court rule mandating the same requirement. We point out that in Allison v. State, 436 So.2d 792 (Miss. 1983), we held that an attorney who perfected a criminal appeal and entered his appearance in connection therewith but who then proceeded to do nothing was in contempt of the Supreme Court. We relied upon Supreme Court Rule 40 which requires an attorney who perfects an appeal to continue to prosecute the appeal unless permitted by the Court to withdraw from the case. We also cited disciplinary rule 2-110(A).
We take this occasion to announce to the bench and bar and the state of Mississippi at large that any time an attorney undertakes to represent a client in any court of record in this state that there attaches at that moment a legal, ethical, professional and moral obligation to continue with that representation until such time as he is properly relieved by the court of record before whom he has undertaken to represent a client. This is true regardless of the circumstances under which his representation of that client may be terminated. This withdrawal may be accomplished only by the filing of a motion with the court with proper notice to the client.
The attorney may then withdraw upon the entry of a written order by the court granting him leave to withdraw from representation of his client. It is not presumed that the courts of record of this state are so blind to the reality of the practice of our profession that permission for leave to withdraw will be arbitrarily or capriciously withheld. We have no doubt that, in the case at bar, had the trial court been made aware for whatever the reason that at a crucial stage in the proceedings Moawad was no longer represented by an attorney the court would have taken immediate steps to secure other counsel for Moawad or would have viewed the motion for a new trial filed out of time in an entirely different light. We conceive of no circumstance in which the courts of record of this state, when properly informed by counsel, would so harshly deprive a litigant of constitutional rights over so technical a violation as occurred in this case. The courts of this state are dedicated to the fair and equal administration of justice and act in accordance with that high principle. It is incumbent upon the members of the bar of this state whose appearance before a court of record for a client assures that court that that client's rights are being protected by a duly licensed member of the bar of this state that when those rights are no longer to be protected by that particular member *1093 of the bar he has an immediate duty to notify both the court and the client so that the court may, if necessary, take steps to see that valuable rights are not thereby lost.
This assignment of error is without merit.

B.

WERE THE TRIBUNAL'S FINDINGS OF FACT ERRONEOUS?
As noted in Levi v. Ms. State Bar, 436 So.2d 781 (Miss. 1983), this Court sits as the trier of fact in bar disciplinary proceedings and is in no way prohibited from giving to findings of fact made by the tribunal such weight as in this Court's judgment they may deserve. This Court also has the power to make findings of fact contrary to those made by the tribunal if, in the independent judgment of the Court, the evidence so warrants.
Myers takes the position that proof by clear and convincing evidence requires that the witnesses must be found to be credible, they must remember facts distinctly, the testimony must be clear, direct and weighty, and the witnesses must be lacking in confusion as to facts in issue. See Aetna Insurance Co. v. Paddock, 301 F.2d 807 (5th Cir.1962). Myers therefore says Moawad is unworthy of belief when his testimony is considered as a whole. He urges us to adhere to our own ruling that,
All the testimony of a witness, including that which was given on direct and cross-examination, should be considered as a whole. Isolated portions thereof should not be accepted to the exclusion of the rest of the testimony.
Super Sagless Springs, Inc. v. Willis, 210 So.2d 650, 651 (Miss. 1968); Kennedy v. Williams-McWilliams Industries, Inc., 247 Miss. 595, 156 So.2d 806 (1963).
Myers asserts that the tribunal erred in its findings of fact: (1) that Moawad did not terminate Myers as his attorney; (2) that Moawad instructed Myers to file a motion for a new trial and appeal; (3) that a communication problem existed for Moawad; (4) that Moawad was under pressure following the trial; (5) that McClellan testified that Myers was not fired; and (6) that McClellan's July 6, 1976, letter supports a finding that Myers was not discharged.
Myers contends that it was error for the tribunal to accept Moawad's testimony as to the post-trial conference while rejecting Moawad's version of other disputed facts. For instance, the tribunal gave full credit to Moawad's testimony of not having fired Myers. On the other hand, Moawad testified that both Myers and the Mississippi Attorney represented him, and yet the tribunal found that the Mississippi attorney did not represent Moawad on the criminal charges. There are other contradictions. Moawad testified that he did not ask the white attorney prior to trial to take his case, although the tribunal found that Moawad considered hiring a white attorney prior to trial. Moawad testified that Myers visited him in the county jail the Sunday following his trial, but the tribunal found that Myers departed Mississippi after the trial without again conferring with Moawad. Finally, Moawad said that he never saw McClellan at the trial, but the tribunal found that McClellan attended Moawad's entire trial and was even present for the post-trial conference. Faced with all of these contradictions, Myers asserts that this Court should likewise disregard Moawad's version of the post-trial conference since the factfinding body who actually heard Moawad testify and observed his demeanor found him unworthy of belief on other facts in issue.
This Court, as the finder of fact, may accept or disregard the testimony of a witness, in whole or in part, as it deems it worthy or unworthy of belief. Alexander v. State, 251 Miss. 847, 171 So.2d 517 (1965). This Court is as free as was the tribunal to credit those portions of Moawad's testimony which it deems to be worthy of belief, and reject other portions. We find that, based upon Moawad's testimony as a whole, the tribunal correctly credited his version of the post-trial conference and rejected the version offered by *1094 Myers and his associates. We find as a matter of fact that Moawad not only did not discharge Myers at the post-trial conference but to the contrary asked him to file a motion for a new trial and to pursue the appeal.
This assignment of error is without merit.

C.

PUNISHMENT
This Court has the independent authority to reassess the punishment meted out in bar disciplinary proceedings and increase or decrease the punishment as it deems proper. In Mississippi State Bar v. Phillips, 385 So.2d 943 (Miss. 1980), we vacated the tribunal order suspending that attorney from the practice of law for two years, and ordered that he be disbarred.
In A Mississippi Attorney v. Ms. State Bar, 453 So.2d 1023 (Miss. 1984), this Court vacated a 45-day suspension and ordered that the attorney receive a private reprimand. In Phillips, the attorney's disbarment was based upon a conviction which involved moral turpitude.
Myers and the Mississippi Attorney both argue that no punishment should be imposed against them, while the Bar contends that this Court should order that Myers be disbarred. Myers argues that we should consider the fact that this is an isolated incident and not a pattern of misconduct. Matter of Francovich, 94 Nev. 104, 575 P.2d 931 (1978). Also, Myers points out that he fully cooperated in the investigation, In re Florsheim, 63 App.Div.2d 504, 408 N.Y.S.2d 69 (1978). Myers argues that since this is the only complaint ever filed against him and since he fully cooperated, a two-year suspension is unwarranted and excessive. He contends that his conduct is not nearly so serious as In re Fox, 296 So.2d 701 (Miss. 1974) (mishandling collections in stock purchases), or Harris v. Mississippi, 393 So.2d 1307 (Miss. 1980), (excessive fee and mishandling business). Since those two actions involved deliberate conduct and moral turpitude, Myers argues that his punishment should be less than the suspension for four months and one year respectively in those cases.
The Bar contends that In Matter of Walton, 427 N.E.2d 654 (Ind. 1981), modified 431 N.E.2d 474 (Ind. 1982), supports the upholding of at least a 2-year suspension, because the attorney, just as Myers, was found guilty of inter alia neglect of legal matters, failure to carry out contract of employment, and failure to seek lawful objectives of client. The Bar cites In Matter of McKenna, 422 N.E.2d 287 (Ind. 1981), in which an attorney found guilty of intentionally failing to carry out his contract of employment and neglecting legal matters entrusted to him should be disbarred. Myers points out that this case involved essentially a default judgment since the attorney neither entered an appearance nor contested his disbarment.
It is Myers' position that his default, if any, is a default by negligence and the punishment is much too severe when compared to other punishments rendered by the bar or the Court in such circumstances.
Not cited by either party is the very recent and factually similar matter of the suspension of Hermel Johnson, Confidential Misc. No. 134, decided by this Court on December 12, 1984, where Johnson failed to appeal a conviction of rape, after having accepted a partial payment of fee. The judgment of the tribunal, which was affirmed by this Court, was the suspension of Johnson for a period of 90 days. In view of the fact that this is the most severe punishment for failure to perfect a criminal appeal that can be found by this writer, there is some force to Myers' argument that the two-year suspension is excessive. On the other hand, the gravity of the misconduct, deliberate abandonment of a criminal defendant at a crucial stage in the trial, warrants serious concern. This is particularly true where the abandoned client suffers life, plus 20, plus 5 years in the state penitentiary without the benefit of appeal.
Taking into consideration all of the factors present in the record in this case, *1095 we are of the opinion and find that the private reprimand issued to the Mississippi Attorney should be and it is reversed and remanded to the Mississippi State Bar, with direction that should the bar decide to proceed further the Mississippi Attorney be given a full hearing and the opportunity to defend himself on specific charges.
We are further of the opinion and so find that the two-year suspension of Lewis Myers is not unreasonable or excessive on the record of this case and the action of the complaint tribunal in suspending him from the practice of law for two years is, therefore, affirmed.
AFFIRMED AS TO APPELLANT LEWIS MYERS; REVERSED AND REMANDED AS TO THE MISSISSIPPI ATTORNEY.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
ANDERSON, J., not participating.