ON PETITION FOR REHEARING

BANKS, Justice,
for the Court:
The original opinions in this case are withdrawn and these opinions are substituted therefor.
Today the issues we resolve center around an attorney’s handling of a petition for the removal of disabilities pursuant to Miss.Code Ann. § 93-19-19 (1972). We conclude that attorney Richard Barrett did not err in filing the petition for the removal of disabilities in Scott County. Despite that, we find that Barrett violated his oath of office, as well as Mississippi Code of Professional Responsibility, Disciplinary Rules 1-102(A)(4, 5, and 6) by failing to inform the court that a guardianship existed in Rankin County. Consequently, we affirm the public reprimand ordered by the tribunal.
Conversely, even though we conclude that while Barrett engaged in unnecessary gamesmanship when he refused to move for a continuance, he should not incur a fine where the tribunal continued the matter, sua sponte, based on its assessment that Barrett was not physically able to proceed, despite the fact that Barrett was present and continuing to refuse to request a continuance, for the stated reason of preserving his “speedy trial” argument. We vacate the order assessing the fine.
I.
This appeal arises out of a disciplinary hearing in which the Complaint Tribunal of the Southern District of the Mississippi State Bar found that Richard Barrett violated DR’s 1-102(A)(3, 4, 5 and 6) of the Mississippi Code of Professional Responsibility and the Attorney’s Oath of Office. The complaint was filed in 1982. The merits of the case were not heard until 19.91. The initial proceedings in which the Committee on Complaints recommended a public reprimand came before this Court in Attorney K v. Mississippi State Bar Ass’n, 491 So.2d 220 (Miss.1986). There we found Barrett’s procedural rights to have been violated and remanded for further proceedings. After remand and a full hearing in May of 1991, the Tribunal imposed a public reprimand as the appropriate sanction. Barrett filed a motion for reconsideration. The motion was denied. Barrett appealed. The Bar cross appealed.
The basis of the Bar’s action against Barrett revolves around Barrett’s representation of the MacPherson family (Charles, the father, and Brenda, the daughter) in a removal of disabilities proceeding in the Chancery Court of Scott County. Shirley MacPherson, Charles’ former wife and Brenda’s mother, was killed in an automobile accident on January 18, 1978. Brenda, who was then fourteen-years old, was Shirley’s only surviving heir.
On July 17, 1978, Charles, represented by Barrett, filed a petition for general guardianship of the person and estate of Brenda wherein he asked to be appointed general guardian of said minor and to be authorized to pursue whatever actions at law or equity against various individuals or entities, who may be liable to Brenda. On the same day a decree appointing Charles as the guardian over his daughter’s person was entered. Charles also filed on that day a petition to sell Shirley’s residence for $15,000. The chancellor disapproved the sale because he was personally familiar with the value of the property involved. The chancellor ordered an appraiser’s opinion concerning the fair market value of the house. On July 21,1978, an amendment to petition for sale of real property was filed by Charles to sell Shirley’s property for $23,000. The appraisal placed the value of the house at $22,000. The petition was granted.
On August 17, 1978, Charles filed a petition to substitute guardian as plaintiff in an *1156 action pending, for authority to settle an insurance suit for $10,000, to approve an attorney contract and fee of $5,000, to pay funds and to provide allowance to guardian for ward. The court granted the relief sought by Charles with the exception that only $500 was approved for Barrett’s attorney fees because he did not support his request with the production of sufficient documentation justifying a larger fee.
Charles’ father Bill was appointed guardian ad litem in March of 1978. The Court found on its own motion and for good cause shown, that Charles had absented himself from the jurisdiction of the court, had neglected, refused and failed to perform his duties and responsibilities as guardian and it was reasonable and proper for Charles to be removed as guardian.
Barrett later filed a petition for permission to withdraw as counsel for the minor and for payment of attorney fees. In his petition, Barrett alleged that despite diligent effort, he had not been able to locate his client. An ex parte hearing was held before the Chancery Court of Rankin County, Mississippi, resulting in the entry of a decree approving final accounting, removing Charles as guardian, removing Bill McPherson, Brenda’s grandfather, as guardian ad litem, appointing the chancery clerk as guardian, and approving withdrawal of counsel and granting leave to Barrett to become a party in the guardianship case for the purpose of protecting any attorney fees awarded him for the service he had provided the guardianship.
From August of 1979 until February 1982, the guardianship and estate cases remained dormant. In February 1982, Barrett asked Hinds County Chancellor Paul Alexander what the usual procedure would be with regard to the removal of disability of minority for a minor. Shortly thereafter, Barrett made the same inquiry with the Rankin County Chancellor, who wanted to know to which case he was making reference. Barrett informed the chancellor that the reference involved the case of Brenda Carol McPherson. The chancellor looked through Brenda’s file and found a draft of the petition to remove the disability of minority. The chancellor informed Barrett that he would require extensive proof of the minor’s ability to manage her own estate before he would consider removing her disability of minority.
Subsequently, it is alleged, the McPher-sons moved to Scott County. On March 3, 1982, Barrett filed a petition for general removal of disability of minority on behalf of Brenda in the Chancery Court of Scott County, Mississippi. Charles and Bill, Brenda’s father and grandfather, joined in the petition. The petition was heard on an ex parte basis before the special chancellor. According to the chancellor, the reason given for the removal of disabilities was Brenda wanted to enter into the restaurant business with Charles and Bill and needed to be able to sign contracts and enter into various business relationships on behalf of the restaurant enterprise. Although the question of financing the restaurant arose, neither Barrett nor his clients informed the chancellor that Brenda wanted to enter a business venture, and stood to gain access to approximately $20,000 in her guardianship estate.
The special chancellor granted the petition on March 3, 1982. Six days later Barrett filed a petition for closing estate, for dissolution of guardianship, for accounting and disbursal of funds to be filed by Brenda in the Chancery Court of Rankin County, Mississippi. The Rankin County Chancellor then contacted the special chancellor and informed him of the possibility of fraudulent procurement of a decree in Scott County Chancery Court removing the disability of the minor. Prior to that occasion, the Rankin County Chancellor wrote the special chancellor a letter informing him that he expected Barrett to file a petition to close the guardianship and that such petition had now been filed. The special chancellor informed the Rankin County court that no mention was made of any pending guardianship matter when the petition came before him, and he noted that he felt that he “was misled by the witnesses who testified.”
On April 21, 1982, a hearing was held in Rankin County Chancery Court before Judge Bridges concerning what evidence, if any, was presented to the Chancellor of the Second Chancery Court District involving the existence of the guardianship. No evidence *1157 was adduced indicating that there was any mention of an ongoing active guardianship for Brenda’s benefit. On April 22, 1982, Barrett filed a Motion for Recusal of the Chancellor of Rankin County pursuant to § 165 of the Constitution of the State of Mississippi. The chancellor entered an order on February 24, 1988, recusing himself as chancellor in the guardianship of Brenda Carol McPherson and estate of Shirley N. McPherson. The chancellor appointed Chancellor Paul Alexander upon agreement of all parties. The guardianship and estate cases were transferred on August 31, 1983, to the Scott County Chancery Court at the request of Brenda. The removal of disability petition was affirmed.
On December 5, 1988, the Bar filed a formal complaint against Barrett charging him with violating the Mississippi Code of Professional Responsibility. The investigation following remand in July 1986 was protracted, due in part to continuance sought by Barrett and witness availability. Barrett filed an answer on February 22,1989. Upon the Bar’s motion for a trial setting filed April 18, 1989, the Tribunal set the trial date for August 30, 1989. The Bar in its motion to set a trial date had noted that the 180-day rule, governing tribunal adjudications, would run on June 5,1989. There was no objection to the August trial date, even though it came after the 180-day rule had expired. The trial did not occur then because one of the tribunal could not attend. The Tribunal continued this case three additional times before reaching the merits. Trial dates were set for August 30, 1989, September 5, 1989, December 8, 1989, and May 23, 1990. The September 5 trial date was rescheduled because the assistant general counsel assigned to prosecute this case was pregnant. Chancellor Billy Bridges, a material witnesses, was not available on December 8, and the trial was continued. On its own motion on March 14, 1990, the Tribunal set the trial date for May 23. On April 10,1990, Barrett filed a motion to dismiss. It was denied. On May 23, Barrett appeared in court in a half-body cast and under the influence of prescription drugs. Barrett refused to move for a continuance. After a period of time during which the status of Barrett’s health was uncertain, the presiding judge granted a continuance. A trial on the merits was set and commenced on May 3, 1991.
II.
Barrett contends that the trial court erred in disciplining him because his position in representing his client was supported by the law or by a good faith argument. That is, under the law of this state, Barrett could lawfully file a petition for the removal of disabilities in the county where the minor resided. In addition, Barrett argues he acted in good faith when he filed the petition in Scott County.
Conversely, the Bar contends that Barrett did not act in good faith. Since Charles had been removed as Brenda’s guardian, the Bar argues, Barrett should have filed the petition for the removal of disabilities in Rankin County, where the chancellor had been appointed as Brenda’s guardian. We disagree.
Miss.Code Ann. section 93-19-1 provides: The chancery court of the county in which a minor resides, or the chancery court of a county in which a resident minor owns real estate in matters pertaining to such real estate, may remove the disability of minority of such minor.
The language in section 93-19-1 is quite clear. It explicitly permits the removal of disability in the chancery court of the county where the minor resides or owns real property. Although Barrett had two options as to where he could file the petition for the removal of disability, he opted to file the petition in the county in which Brenda resided. Thus, Barrett’s conduct fell within the purview of section 93-19-1.
We reject the Bar’s contention that Barrett should have filed the petition in the Chancery Court of Rankin County. There is no basis to support such a contention. The statute does not require that a petition for the removal of disabilities be brought in same court where the guardianship has been established. Rankin County was not the proper place to file a removal petition because Brenda’s residence was not there and she did not own any real property in that county. Additionally, there was no evidence *1158 that Brenda owned real property anywhere in Mississippi. Scott County was the only proper place to file the petition because Brenda resided there. Barrett did not act contrary to law when he filed there.
III.
Having resolved the issue of where Barrett could have filed the petition for the removal of disabilities, we turn to Barrett’s duty to the court upon filing the petition. Here, we focus on what Barrett should have done once he filed the petition in Scott County.
Barrett contends the tribunal erred in finding that he violated DR 1-102(A)(3, 4, 5, and 6) of the Code of Professional Responsibility and section 73-3-35 of the Mississippi Code Annotated (1972).
This Court is charged by law to inquire whether the evidence before a Complaint Tribunal is clear and convincing. “In an attorney disciplinary proceeding, the Supreme Court is the supreme trier of fact, and as a matter of law, is not bound by any findings of fact made by the Complaint Tribunal.” Goeldner v. Mississippi State Bar Ass’n, 525 So.2d 403, 406 (Miss.1988).
The attorney’s oath is found in Miss.Code Ann. § 73-3-35 (Supp.1988). It provides that:
Every attorney and counselor at law, before he shall be permitted to practice, shall produce his license in each court where he intends to practice, and in the presence of such court, shall take the following oath or affirmation to wit: “I do solemnly swear (or affirm) that I will demean myself, as an attorney and counselor of this court, according to the best of my learning and ability, and with all good fidelity as well to the court as to the client; that I will use no falsehood nor delay any person’s cause for lucre or malice, and that I will support the constitdtion of the State of Mississippi so long as I continue a citizen thereof. So help me God.”
DR 1-102(A)(4), (5), and (6) of the Code of Professional Responsibility[1] provides: “a lawyer shall not engage in illegal conduct involving moral turpitude, engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, engage in conduct that is prejudicial to the administration of justice, or engage in any other conduct that adversely reflects on his fitness to practice law.”
The question before this Court is whether our law required Barrett to disclose the existence of a guardianship in Rankin County to the chancellor in Scott County. We answer in the affirmative.
“An attorney in his dealings with the court should always make full disclosures to the court and should never seek to mislead the court into unnecessary or unwarranted action by any artifice or concealment.” State v. Weinstein, 411 S.W.2d 267 (Mo.App.1967). In Weinstein, the relators’ attorney failed to disclose the existence of the entry of appearance and request made of the state when he filed the relators’ Petition for Writ of Prohibition. The Weinstein Court stated that “it was the responsibility and duty or relators’ attorney to give us a frank and complete resume of all the actions he had taken in the Juvenile Court proceeding that was pending before respondent at the time said attorney filed relators’ Petition for Writ of Prohibition.”
We conclude that Barrett had a duty to make full disclosure to the chancellor of Scott County regarding the existence of a guardianship in Rankin County. While not explicitly stated in our rules, the attorney’s oath of office required Barrett to deal honestly with the court. The duty to deal honestly with the court requires the disclosure of all material facts. Here, the court was only told that Brenda was 19 years old and that she needed her disability removed so she could enter into a restaurant business with her father and grandfather. When asked how the venture was to be financed, the parties spoke of a loan. That was only half of the story.
In the face of keen interest by the court into the reason for removal of disability and the financial resources for the proposed restaurant venture, Barrett and his clients failed to disclose the separate estate of the minor child which was the subject of a guardianship *1159 in Rankin County. Certainly, it was relevant to the court that the minor had an estate in another county which she could not, in the absence of removal of the disability of minority, dispose of summarily. Moreover, Chancellor Bridges had informed Barrett that if the petition came before him he would inquire extensively into Brenda’s ability to manage her estate.
While the existence of a guardianship in another county may not have ultimately affected the chancellor’s decision to grant the petition, it is necessary that a court removing disability have all pertinent information concerning the circumstances of a minor’s life. Since the chancellor was not informed of the guardianship in Rankin County, the parties deprived him of an opportunity to consider relevant information regarding the removal of disability.
Barrett contends that his failure to disclose was the “honorable presentation of his chent’s case.” To support his contention, Barrett cites McCartney v. United States, 343 F.2d 471, 472 (9th Cir.1965), for the proposition that an attorney has a duty to honorably present his Ghent’s contentions in the hght most favorable to his ehent.
While it is true that attorneys are charged with the duty of honorably representing their chents, that duty of honorable representation does not relieve an attorney of his duty to make full disclosure to the court. When representing a chent before a court, an attorney has a duty to conduct himself “according to the best of my learning and ability, and with all good fidelity as well to the court as to the client.”' See Miss.Code Ann. 73-3-35. (Emphasis supphed.)
In addition, Barrett violated DR 102(A)(4), (5), and (6). By faihng to disclose ah relevant information to the court, Barrett engaged in conduct involving dishonesty. Such conduct was prejudicial to the administration of justice and adversely reflects on Barrett’s fitness to practice law.
IV.
Barrett contends that these proceedings should be dismissed for lack of a speedy trial. It is clear that the entirety of the delay cannot be attributed to the Bar. We need not get into a protracted discussion of the various periods of delay, however. Barrett can not prevail on the deprivation of a speedy trial issue because there is no evidence that Barrett was prejudiced by the delay. Myers v. Miss. State Bar, 480 So.2d 1080 (Miss.1985).
Barrett contends that Mississippi recognizes the speedy trial rule of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). He is correct. See, Perry v. State, 419 So.2d 194 (Miss.1982). However, Barrett fails to cite any authority that stands for the proposition that Mississippi imposes the same speedy trial requirements in disciplinary actions that it imposes in criminal cases. The fact is, we have recently rejected just that contention. The Mississippi Bar v. An Attorney, 636 So.2d 371 (Miss.1994).
Barrett’s classification of disciplinary proceedings as quasi-criminal is correct. This Court on several occasions has recognized that bar disciplinary proceedings are inherently adversary proceedings of a quasi-criminal nature. Attorney K v. Mississippi State Bar, 491 So.2d 220 (Miss.1986), citing Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss.1983). However, it does not follow that the same rules governing criminal cases govern quasi-criminal actions. Barker and Perry address the constitutional right to speedy trial applicable to criminal cases. A disciplinary action is not a criminal action and there is nothing in our case law that indicates that the same balancing test used in criminal proceedings must be utilized in disciplinary actions. This is in accord with most states. Some states have held that the right to a speedy trial has no application whatever to a disciplinary proceeding against an attorney. In the Matter of Williams, 513 A.2d 793, 796 (D.C.1986); In the Matter of O’Hara, 63 A.D.2d 500, 408 N.Y.S.2d 70, 72 (N.Y.1978); In the Matter of Posner, 275 Md. 250, 339 A.2d 657, 660 (1975), cert. den. 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975).
We recognize the need to dispose of disciplinary actions in a timely fashion. Rule 8.1 sets forth the time in which a disciplinary action should be adjudicated. It provides:
*1160 Within ten (10) days following the designation of a complaint tribunal, the presiding judge shall establish a tentative schedule for discovery, motion hearings and rulings, trial and adjudication, all of which shall be completed within one hundred and eighty days from the date of the designation of the Tribunal, unless extended by the court on motion of either party for good cause shown.
Mississippi Code of Professional Responsibility DR 8.1 (1993).
In the instant case, the matter was not disposed of within the 180-day time frame. There were four delays before the merits of this case were heard. Barrett claims that the burden is on the bar to show that there was good cause for delay. He cites Nations v. State, 481 So.2d 760, 761 (Miss.1985), to support his position.
Nations is distinguishable from this case, as it involved a criminally accused’s right to a speedy trial pursuant to Miss.Code Ann. 99-17-1. This is a disciplinary proceeding, and although it is quasi-criminal in nature, it is not governed by the same rules that are utilized in criminal proceedings.
In Myers we held that the time limitations in §§ 73-3-319 and 325 are directory rather than jurisdictional. 480 So.2d at 1090. We observed that “[sjtrict construction of statutory time limits seems much more appropriate in election contests and non-tenured teacher dismissals than in the more cautious context of attorney disciplinary proceedings.”
Barrett would have to demonstrate that he was substantially prejudiced by the delays before this court could determine that he was deprived of his right to a fair trial. Id.; Mississippi Bar v. An Attorney, 636 So.2d at 374-75. Barrett alleges that he was prejudiced “because ' material witnesses, the McPhersons present in the state during the initial phase when a speedy trial might have been had, were later absent from the state and unavailable as witnesses, to the necessary and manifest prejudice of appellant.”
Although Barrett contends that the McPhersons were material witnesses, there is nothing in the record to support his allegation. Absent from the record is any indication that the McPhersons would be called as witnesses in the ease or had anything of value to add. In fact, the McPhersons were never subpoenaed. Additionally, they never testified in any of the previous hearings. As such, Barrett has not demonstrated that he intended to call the McPhersons. Therefore, their absence cannot be used to support his claim of prejudice. It follows that Barrett’s speedy trial claim must fail. Id.
V.
Barrett argues that it was error to assess expenses against him without substantial justification. In the instant case, the tribunal judge assessed additional costs against Barrett because Barrett refused to move for a motion for continuance in a misguided effort to preserve his speedy trial argument.
Disciplinary Rule 27 of the Mississippi Rules of Professional Responsibility provides:
A Tribunal or the Court may assess costs incurred in the investigation, prosecution and defense of any disciplinary matter as justice may require. Such costs and expenses shall include the actual and reasonably necessary expenses of the Bar, excluding Complaint Counsel’s time.
We agree with Barrett to the extent that costs have been assessed to him as a sanction for his failure to request a continuance. While Barrett may have engaged in unnecessary gamesmanship, his failure to request a continuance was his right and he should not incur additional costs where the tribunal continued the manner sua sponte based on its assessment that Barrett was not physically able to proceed despite the fact that Barrett was present and continuing to refuse to request a continuance in order to preserve his speedy trial argument. That is not to say that the tribunal erred in continuing the matter. We only say that Barrett’s refusal to request a continuance should not incur a sanction. To the extent that the continuance increased the “actual and reasonably necessary expenses of the Bar,” Barrett is liable only because misconduct was ultimately found. Rule 27(a) and (b), Rules of Discipline.
*1161 It is not clear to this court whether Barrett has been assessed any costs that he would not ordinarily have been assessed as a lawyer against whom discipline is imposed. To the extent that cost have been assessed which would not have been assessed to Barrett as a losing party, the order of the tribunal assessing costs is vacated.
VI.
On cross appeal, the Bar argues that Barrett should be sanctioned more severely than a public reprimand because of his willful and intentional misconduct as well as prior discipline that has been imposed upon him. The Bar cites a litany of cases in support of its contention. We reject the Bar’s assertion.
In disciplinary matters, this Court by law is the finder of fact. Our great respect and appreciation for the work of those who serve on the complaint tribunals may not, as a matter of law, translate into any duty of deference to findings or decision their made. In practical effect, we proceed ab initito. Attorney Q v. Mississippi State Bar, 587 So.2d 228, 281, (Miss.1991), citing Mississippi State Bar v. Odom, 566 So.2d 712, 714 (Miss.1990); Mississippi State Bar v. Nichols, 562 So.2d 1285, 1287 (Miss.1990); Mississippi State Bar v. Vamado, 557 So.2d 558, 559 (Miss.1990); Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss.1983).
Nevertheless, we reluctantly ratify the sanction recommended by the tribunal. While Barrett’s conduct violated a reasonable interpretation of his oath and our rules, it transgressed no explicit provision or prohibition. The Bar’s protracted delay in instituting these proceedings may also have been considered by the tribunal.
CONCLUSION
For the foregoing reasons the order of the tribunal imposing a public reprimand is affirmed and the order taxing costs is vacated with costs for these proceedings to be taxed in a subsequent order of this court.
ORDER OF COMPLAINT TRIBUNAL AFFIRMED IN PART AND REVERSED IN PART.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN and JAMES L. ROBERTS, JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by McRAE, J.
McRAE, J., dissents with separate written opinion.
SMITH, J., not participating.

. This provision was applicable at the time of occurrence of the offense here charged.